# EXHIBIT 1

December 02, 2005


United States District Court
303 K Street
Anchorage, Ak 99501-2084


RE:    Civil Case Number A05-110 CV  (JKS)

As It Pleases The Court:

The land in question was deeded to my father(Harold Lie) by Fred Morrison by Quit-Claim Deed in the Kotzebue Recording District in June of 1959.  Ownership of that land was further acknowledged on November 24, 2004 by Kikiktagruk Inupiat Corporation. Copies of supportive documentation are attached.

Mabel Johnson is, to the best of my knowledge, the owner of adjoining property, identified as lot 22 on the attachment.  Our ownership of Lot 21 is clear and also public knowledge.  I have no idea why Karan Gallahorn built a cabin on our property or questions our ownership of that property.



Sincerely,

Sharron Lie
Box 303
Kotzebue Ak 99752

Cc: KIC Board-Kotzebue

    Donald C Mitchell
    1335 F Street
    Anchorage Ak 99501


Exhibit  1
Page  1  of  5
PORTIER & MIKKO

# KIKIKTAGRUK INUPIAT CORPORATION

P.O. Box 1050
Kotzebue, Alaska 99752
Phone: (907) 442-3165
Fax: (907) 442-2165

## SETTLEMENT OF 14(c)(1) RECONVEYANCE OBLIGATION

We, Nina A. Lie and Sharron J. Lie, hereby certify that the parcel identified for reconveyance by the Kikiktagruk Inupiat Corporation and located on the Noatak River, near the community of Kotzebue and shown as Lot #21, within Section 10, Township 20 North, Range 18 West, Kateel River Meridian on the Kikiktagruk Inupiat Corporation's ANCSA 14(c) Kotzebue Partial Map of Boundaries, containing approximately 1.03 acres satisfies any claims of entitlement we have under Section 14(c)(1) of the Alaska Native Claims Settlement Act.

Signed: _____
Nina A. Lie

*Sharron Lie*
Sharron J. Lie

Date: *November 24, 2004*

STATE OF ALASKA                     )
                                    ) ss.
SECOND JUDICIAL DISTRICT            )

THIS IS TO CERTIFY that on the *24th* day of *November*, 2004, before me, the undersigned Notary Public, personally appeared Sharron J. Lie, to me known and known to me to be the person named in the foregoing Settlement Form, and she acknowledged to me that she has in her official capacity signed the Settlement Form as the free act and deed of her will.

WITNESS my hand and notarial seal on the day and year in this certificate first above written.

*[Notary seal: LORRAINE S. HUNNICUTT, NOTARY PUBLIC, STATE OF ALASKA]*

*Lorraine S. Hunnicutt*
Notary Public in and for Alaska
My Commission expires: *2/19/07*

Exhibit
Page 2 of 5
PORTIER & MIKKO



SECTION 15

GOVERNMENT LOT 2

WATER SLOUGH

## SURVEY DETAIL
### SCALE: 1"=60'

N63°E    252'

LOT 21

N27°W    209'

WATER SLOUGH

CABIN

CACHE    30.5'±

S63°W    100'    30.5'±

109'    N27°W    80'    CABIN

LOT 22    108'

S63°W

NORTH

0  20  40  60  80  100  120
SCALE

GOVERNMENT LOT 3

Exhibit 1
Page 3 of 5
FORTIER & MIKKO

# QUIT - CLAIM DEED

### (ALASKA)

BOOK 42 PAGE 1
Kotzebue Recording District

**THE GRANTOR**    Fred H. Morrison, of the Kotzebue Area, Alaska, the party of the first part

for and in consideration of   Ten ($10.00) Dollars and other valuable considerations   does convey   and quit claim   to   Harold J. B# Lie, of Kotzebue, Aleska my interest in and to the following described real estate, situated in the   Noat=ak-Kobuk Precinct, Second Division, Territory of Alaska:    An island situated on the Noatak River and being 30 ml from Kotzebue by the River   and about 17 ml from Kotzebue, by air, and being roughly 1 ml long by one - quarter of a mile wide, together with the house, the cache and the fishracks stand- ing thereon   Also all other things that may pertain to the home except my personal belongings   and all things on the island whatsoever, except some gas and oil that the Buyer has consented to the removal of.

    **

Return to :   Nina A. Lie
              P.P. Box 1
              Kotzebue, Alaska  99752-0001

Dated this     twenty fifth     day of   June, 1959, nineteen fifty nine.

Signed, Sealed and Delivered in the Presence of

*Charlie Saums*                    *Fred H. Morrison*                (SEAL)

                                   ----------------------------------- (SEAL)

                                   Individual Acknowledgment *(Alaska)*

UNITED STATES OF AMERICA,
TERRITORY OF ALASKA.                    } SS.

    THIS IS TO CERTIFY that on this____-25th____day of____June____, 19 59, before me the undersigned, a Notary Public in and for the Territory of Alaska, duly commissioned and sworn, personally appeared____Fred H. Morrison to me known to be the person_____ described in and who executed the above and foregoing instrument, and acknowledged to me that_____he_____ signed and sealed the same freely and voluntarily for the uses and purposes therein mentioned.
    WITNESS my hand and official seal the day and year in this certificate first above written.

                        *Alfred G. Maurice*
                        U. S. Commissioner.   at Kotzebue, Alaska.
Notary Public for Alaska. My commission expires____indef

Exhibit 1
Page 4 of 5
PORTIER & MIKKO

BOOK 42 PAGE 191
Kotzebue Recording District
Individual Acknowledgment *(Alaska)*

UNITED STATES OF AMERICA,
TERRITORY OF ALASKA.                                    } ss.

THIS IS TO CERTIFY that on this_____day of_____, 19____,

before me the undersigned, a Notary Public in and for the Territory of Alaska, duly commissioned

and sworn, personally appeared_____

_____

to me known to be the person_____ described in and who executed the above and foregoing instru-

ment, and acknowledged to me that_____he_____ signed and sealed the same freely and volun-

tarily for the uses and purposes therein mentioned.

WITNESS my hand and official seal the day and year in this certificate first above written.

_____

Notary Public for Alaska. My commission expires_____

*93-559*

RECORDED - FILED 18+

*KOTZEBUE* REC. DIST.

DATE *SEPT 10* 19 *93*

TIME *11:00* A M

Requested by *Nina Lie*

Address *Box 1*

*Kotz, Ak 99752*

*463615*

---

No. 10710.

QUIT-CLAIM DEED
*(ALASKA)*

FROM

Fred H. Morrison

TO

Harold J. Lie
Kotzebue, Alaska

Dated June 25, 1959

FILED FOR RECORD AT REQUEST OF
Harold J. Lie
Buyer.

on the 25th day of June 1959

at 9.25 minutes past 11 A M.

and recorded in volume 36

of_____ Land Deeds, Page 192,

Records of U.S. Commissioner

Kotzebue Precinct

District Court Commissioner
at_____ Alaska.

FORTIER & MIKKO

HEARING OFFICER REPORT

FOR LIE AND JOHNSON 14(c)(1) APPEALS

March 8, 1994

On December 17, 1993, Mr. Willie Goodwin Jr., Land Manager of the
Kikiktagruk Inupiat Corporation (KIC) hired me, Mr. David G. Hanson
of Arktos Associates, to serve as hearing officer for two 14(c)(1)
appeals filed by Nina A. Lie and Sharron Lie, and by Mabel Johnson.
I was to review the files and submitted information on each
14(c)(1) claim, hold appeal hearings and write a hearing officer
report in accordance with the *KIKIKTAGRUK INUPIAT CORPORATION Policies
and Procedures ANCSA Section 14(c)(1) and Section 14(c)(2)
Reconveyances* (KIC 14(c) policies). The hearing officer report was
to consider the written information in the record, information
gained during the hearings, and any additional written submissions.
The report was also to include findings of fact regarding each
appeal and a recommendation to approve or disapprove the appeal.
The hearing officer report was to be submitted within thirty days
of the close of the hearing.  The specified tasks have been
completed in accordance with the KIC 14(c) policies.

The appellant parties, Nina and Sharron Lie, and Mabel Johnson,
appealed KIC decisions regarding the size of their adjacent
14(c)(1) subsistence campsites on Chairtree Island. Chairtree
Island is located in the Noatak River approximately thirty miles
from Kotzebue. The two subsistence campsites are the only 14(c)(1)
parcels on the island and the appeals are interrelated since
increasing the size of either party's parcel could impact the other
party's parcel.

Following a review of each party's 14(c)(1) files and appeals, two
appeal hearings were scheduled and held on each appeal.  The Lie
appeal hearings were held in Anchorage on February 1, 1994 and in
Kotzebue on February 7, 1994.  The Johnson appeal hearings were
held in Kotzebue on February 7, 1994 and in Anchorage on February
9, 1994.

All of the hearings were recorded for information purposes but the
recordings did not represent an official hearing record.  Since the
two appeals were interrelated, both parties observed the other
party's hearing in Kotzebue. Tapes of all hearings were duplicated
and made available to representatives of both parties and KIC.
Since new information was provided in the final hearings, submitted
written documents as well as the tapes were made available to all
parties, and the hearing was not officially adjourned until 5:00
p.m. February 14, 1994, to provide an opportunity for final written
comments.  Materials hand delivered or postmarked by the 5:00 p.m.
February 14 deadline were considered part of the hearing record.
Both appellants submitted additional comments by the February 14,
1994 deadline.

Exhibit __2__

Page __1__ of _17_.

Written communications regarding hearing logistics and scheduling are included in the hearing record which has been provided to KIC. Attendance lists for each of the hearings including observers, the original hearing tapes, and appellant submissions are also included in the record.

This report presents separate sections on the Lie and Johnson appeals. However, since the appeals are interrelated, information from one party's hearings relevant to the other party's appeal is appropriately considered in the separate appeal analyses. Following an introduction, each appeal narrative addresses the 14(c)(1) application status, the basis of the appeal, appeal considerations, findings of fact and conclusions, and hearing officer recommendations.

- 2 -

Exhibit  2
Page  2  of  17

# EXHIBIT 2

## Lie Appeal

### Introduction:

Ms. Nina A. Lie and her daughter, Ms. Sharron J. Lie, applied to
KIC for a 14(c)(1) subsistence campsite on Chairtree Island on
February 2, 1992.  On August 26, 1993, Mr. Willie Goodwin, the Land
Manager for KIC, sent a letter to the Lies informing them that the
KIC 14(c)(1) committee had determined that their subsistence
campsite application fulfilled the criteria of the KIC 14(c)(1)
policies and that based on field surveys and land staff
recommendations determined that the size of their subsistence
campsite parcel would be one acre.  On September 27, 1993, the Lies
sent a letter to Mr. Goodwin appealing the 14(c) committee's
decision to grant them only one acre for their subsistence
campsite.  The appeal letter argued that they should receive a
larger parcel and implied that that parcel possibly should include
all of Chairtree Island.

Two hearings were held on the Lie appeal.  The first hearing was
held at 2:00 p.m. on February 1, 1994 in Room 290 at Providence
Hospital in Anchorage, Alaska.  Ms. Nina Lie and her daughter Susan
Lie represented the Lie family and Mr. Willie Goodwin represented
KIC at the Anchorage hearing.  The second hearing was held at 9:00
a.m. on February 7, 1994 at the Alaska Technical Center Library in
Kotzebue, Alaska.  Ms. Sharron Lie, Ms. Zonna Lie and Mr. Chris
Lie, represented the Lie family and Mr. Willie Goodwin and Mr. Ed
Busch represented KIC at the Kotzebue hearing.  Additional written
information submitted during these hearings included a February 1,
1994 letter from Nina Lie to KIC appointing her daughter as a
personal representative during the Kotzebue 14(c) hearing on
Chairtree Island; a copy of a quitclaim deed dated June 25, 1959
from Fred H. Morrison granting Chairtree Island to Mr. Harold J.
Lie; a copy of the articles of incorporation of the Kikiktagruk
Inupiat Corporation; and seven letters written by acquaintances on
behalf of Nina Lie regarding the ownership and use of Chairtree
Island by the Lie family.  Zonna Lie and Sharron Lie also submitted
a letter with additional information by the February 14, 1994
deadline.

### 14(c)(1) Application Status:

KIC has granted a one-acre subsistence campsite around the long-
term campsite structures and related clearing on Chairtree Island
to the Lie family.  The one-acre campsite does not include the
lands immediately around a cabin built by Dave Johnson.   KIC
granted the one-acre subsistence campsite based on the Lie family
use of the land and the existing structures.  It is also assumed
that KIC's decision took into consideration the family's long-held
belief that they owned the island.

- 3 -

Exhibit  2
Page  3  of  17

Basis of Appeal:

The Lie family believes their subsistence campsite should be larger
than one acre.  During hearings and in their February 14, 1994
letter, the family requested conveyance of all of Chairtree Island.
The appeal argues that since Harold Lie purchased and received a
quitclaim deed for the island and since the family has believed the
deed was valid until recent times, KIC should convey the island to
Nina and Sharron Lie.  The appeal also indicates that Dave Johnson
was given permission by the Lies to build his cabin on the island
and it further questions the appropriateness of the Mabel Johnson
14(c)(a) subsistence campsite claim.  During the hearing process,
the Lie family provided additional information regarding their use
of the island.

Appeal Considerations:

1.    Validity of Lie Quitclaim Deed

Mr. Fred H. Morrison submitted a homestead application to the U.S.
Department of Interior, Bureau of Land Management (BLM) for all of
Chairtree Island in 1956.  Under the application, Mr. Morrison had
to complete certain prove up requirements to gain title to the
land.  When he sold the island by quitclaim deed to Harold Lie for
$500.00 in 1959, he had not yet completed the prove up requirements
and thus did not own the island.   Since a quitclaim deed only
conveys to the grantee whatever interests or rights the grantor
might have, the only rights he could convey were the homestead
application rights.

When Harold Lie purchased the quitclaim deed from Mr. Morrison, he
apparently believed that Mr. Morrison had valid title to the
island.   Consequently, the prove up requirements were never
completed and BLM vacated the homestead claim and closed out the
homestead application file in 1962.   BLM's action effectively
terminated any rights to the island which may have been transferred
as part of the quitclaim deed.

Accordingly, the quitclaim deed did not validly transfer ownership
of the island to Harold Lie since Fred Morrison never owned the
island.  BLM's official conveyance of the island to KIC by Interim
Conveyance #544 provided KIC with clear ownership and title to the
island.   This analysis is based upon a review of the information
provided by BLM and Mr. John Havelock, Esq. included in the Lie
14(c)(1) file.

2.    Lie Family Belief Deed Was Valid

In 1959, the Lie family believed they purchased the island for
$500.00 from Fred Morrison and that the quitclaim deed conveyed
ownership rights.  The family managed the island as their property,

- 4 -

Exhibit  2
Page  4  of  17

removed a building from the island, and specifically gave permission to others to use the island. Other people recognized the Lie's ownership of the island and according to the hearing testimony and the seven letters in the file asked the Lies for permission to use the island. Mr. Dave Johnson, husband of Mabel Johnson, requested and received permission from Harold Lie to build a cabin on the island and use it as a campsite. The Lie family did not submit an allotment application for the island since they believed they already owned it.

The Lie family first realized the deed may not be valid in 1985 or 1986 when Harold Lie was informed by the KIC land manager that KIC owned the land and that the quitclaim deed was not valid. Following this discussion, the Lie family apparently was still confused regarding the status of their ownership rights and the quitclaim deed.

3.    Lie Family Use of Island

The KIC 14(c) policy sets forth criteria for the reconveyance of subsistence campsites. These criteria are restated below.

The applicant shall demonstrate that as of December 18, 1971:

(1) the applicant, or the party through whose use the claim arises, physically occupied a parcel on a regular seasonal basis as a campsite and base for engaging in subsistence activities for a substantial period of time during 1971;

(2) there were improvements located on the parcel related to subsistence activities such as trap line cabins, caches, fish racks, tent frames, etc.;

(3) if no improvements existed, the applicant shall submit sworn statements from at least two non-related persons substantiating the use of the parcel by the applicant;

(4) that the parcel was used as a subsistence campsite exclusively by the applicant or the applicant's immediate family;

(5) the applicant traditionally engaged in subsistence activities and was dependent on these activities for a substantial portion of his livelihood.

Based upon the hearing testimony, the Lies used the subsistence campsite for subsistence berrypicking and hunting often in the early sixties. During the mid to late sixties and early seventies, the family continued to use the area for subsistence hunting and berrypicking. Since they had removed the main cabin, tents were used for overnight trips and day trips were often taken by boat, snowmachine, or plane. This is supported by the 14(c) subsistence

- 5 -

Exhibit  2
Page  5  of  17

campsite application information, the affidavit signed by Charlie
Sour, Sr., comments made during the hearings by Nina Lie and her
family, letters provided to the hearing record, and the KIC land
manager's comments during the hearing that the Lie family use of
the land was not in question.  It should also be noted that KIC has
already determined that adequate use took place in the 1971 period
to justify conveyance of this subsistence campsite and that the
subject of the appeal is not use of the campsite but rather the
amount of area to be conveyed.

Based upon the information provided in the hearing process, it
appears that the Lie family does meet the KIC subsistence campsite
criteria.  The application, Mr. Sour's affidavit, and comments and
letters from Nina, Susan, Sharron, and Zonna Lie confirm that the
family was using the area as a subsistence campsite during 1971 and
adjacent years.  Traditional subsistence campsite improvements are
located on the parcel which were present in 1971 and the Lies added
minor improvements such as a swing.  The campsite was recognized as
belonging to the Lies and other users asked the Lies' permission
which reflects recognition of the applicants' exclusive rights.
The 14(c) application and the hearing record indicate that the
applicant was engaged in subsistence activities and dependent upon
such activities for a portion of their livelihood.

The hearing record indicates that the Lie family used the site less
after the mid-seventies.  The children would still go down for
overnights and to ptarmigan and rabbit hunt.

4.    Johnson Questions Regarding Lie's Use of Land

During   the   Johnson   appeal   hearings,   family   members   and
representatives made statements and submitted letters which
questioned the Lie family's use of the subsistence campsite.  The
statements claimed that during visits to Dave Johnson's cabin,
family members did not see the Lies use their adjacent campsite nor
did they see any sign that the Lies had visited the island.  It was
noted that the Johnsons did not live on the island and were not on
the island on a full time basis.  The Johnsons built a cabin on the
island with the permission of Harold Lie during the sixties and
their visits were primarily for subsistence and recreation
activities.

In reviewing the Johnson family statements and questions, the
importance of the 1971 vesting date should be acknowledged.  Much
of the Johnson representative's testimony at the Kotzebue hearing
focused on the use of the land after the early seventies.  In a
14(c) determination, the key use periods are before and through
1971.  Use of the land in the early seventies may help establish a
use pattern through the 1971 period, but site use information after
the early seventies is mainly relevant to voluntary abandonment
considerations.  During the Anchorage hearing, the Johnson family
did address use of the area during the sixties and early seventies.

- 6 -

Exhibit  2
Page  6  of  17

Since both the Lies and Johnson are appealing to increase the size
of their parcels and an increase in one parcel could impact the
ther party's parcel, an inherent conflict of interest exists. The
ohnson family's comments and questions regarding the Lies' use of
the island, to a certain extent, sets one party's word against
another party's word. It should also be noted that, due to the
hearing schedule, the Johnson family raised questions regarding the
Lie family's use of the land after the conclusion of the Lie family
hearings. Thus, the Lie family did not have an opportunity to
verbally respond to the questions, but did respond through their
February 14, 1994 written submission.

Though the Johnsons have made strong statements, the Lie family has
also made statements and submitted information regarding the use
of the island. Taking into consideration the Johnson family's part
time use of the island, the Lie family testimony, the KIC Land
Manager's statements, and other information in the record, the
Johnson family's statements are not adequate to invalidate the
information regarding the Lies' use of the site.

5.    Abandonment Possibility

The record indicates that the Lies used the site significantly less
after the mid-seventies. A concern could be raised that the Lies
abandoned the site since their use of it significantly diminished.
This approach does not stand scrutiny, however, since the Lies did
continue using the site to some extent and the family assumed they
wned the island and did not try to sell it. The family's intent
to continue to use the site and to assert ownership rights is clear
and an abandonment principle does not apply.

6.    Size of Conveyance

The purpose of the Lie appeal was to increase the size of the
subsistence campsite granted by KIC. KIC 14(c) policies provide
specific guidance and criteria regarding subsistence campsite size.
This guidance and criteria are set forth below.

    The size of the parcel shall not exceed the amount of land
    actually used and necessary for a campsite or temporary
    dwelling while engaged in subsistence activities. The maximum
    size of a parcel shall be no larger than one acre in
    size. . . .

    In determining parcels and sizes of parcels to be conveyed as
    subsistence campsites the following shall be considered:

    (1) Only land used as a campsite or a base from which
    subsistence activities were conducted shall be conveyed.
    Lands actually used for such activities as hunting, trapping,
    berrypicking, timber or wood harvesting shall not be conveyed;

- 7 -

Exhibit ___2___
Page __7__ of __17__

(2)  Lands must have been used exclusively by an applicant or the applicant's immediate family.  Lands used by several families or by many community members will not be conveyed to an individual or individuals;

(3)  Subsistence campsites parcels shall not be conveyed for non-subsistence hunting and fishing activities;

(4)  Parcels shall not be conveyed for hiking, dogsledding, snowmachining or other off-road vehicle routes or use areas.

The policies indicate that the purpose of a 14(c)(1) subsistence campsite conveyance is to convey only the area used and necessary for a campsite or temporary dwelling while engaged in subsistence activities.  It further states that only land used as a campsite or a base from which the subsistence activities were conducted shall be conveyed.  It also specifies that land used for activities such as hunting, trapping and berrypicking, etc. shall not be conveyed. The purpose of a 14(c)(1) subsistence campsite conveyance is obviously not for large land grants or to convey general use areas.

The KIC subsistence campsite policies and criteria are consistent with the Hakala, et al. v. Atxam Corporation decision regarding primary place of business sites for guide operations.  The decision emphasizes that the primary place of business site should be no larger than the site structures and the curtilage around those structures.

The KIC 14(c) policies limit subsistence campsites conveyances to a maximum of one acre.  This limitation reflects the purpose of the subsistence campsite conveyance and is in line with similar size restrictions for subsistence campsites used by other Native corporations.  It should also be noted that KIC has not previously conveyed subsistence campsites significantly over one acre in size.

The hearing testimony does not provide much information regarding a larger subsistence campsite use area.  The KIC land manager indicated the one-acre site includes the traditional structures and cleared area previously used as the Lies' campsite.  The Johnson's cabin parcel was not included in the site but testimony indicates that the vast majority of the use of the Johnson's cabin was by the Johnson family during the sixties and early seventies.  The Lies indicated that a landing area had been cleared at the point of island in the early sixties.  However, this landing area was not continuously maintained, was used by others with and without permission, and could not be considered an exclusive landing strip. The testimony also indicates that use of a boat, snowmachine, and float plane which could taxi right up to the subsistence campsite were the more popular forms of transportation to the site.  Other Lie family uses of the island are general hunting and berrypicking type activities which do not justify conveyance of subsistence campsite acreage.  Consequently, in addition to the credible KIC

- 8 -

Exhibit 2
Page 8 of 17

14(c) policy size limitations, there does not appear to be a use area justification for a larger subsistence campsite parcel.

## Findings of Fact and Conclusions:

The following findings of fact and conclusions are based upon the information available to the hearing officer and the hearing officer's assessment of this information.

1.    The 1959 quitclaim deed for Chairtree Island did not convey ownership of the island to Harold Lie. Any homestead application rights to the island conveyed by the deed were extinguished in 1962 when BLM closed the homestead application file due to a lack of action on prove up requirements. Accordingly, the Lies do not own Chairtree Island.

2.    KIC owns Chairtree Island by way IC 544.

3.    The Lie family believed until, at least, the mid-eighties that the quitclaim deed conveyed valid ownership title to the island and pursued their affairs believing they owned the island.

4.    Under the KIC 14(c) policies, the Lies belief that they owned the island is not a sufficient basis for granting a 14(c)(1) conveyance. It is, however, a relevant consideration.

5.    The Lies adequately used the island as a subsistence campsite during the sixties and early seventies to meet the intent of the 1971 subsistence campsite use requirement and to justify a 14(c)(1) subsistence campsite conveyance. This conclusion is based upon the the Lies' 14(c) application, the Charlie Sour, Sr.'s affidavit, testimony at the hearings, statements by the KIC Land Manager and submissions to the hearing records.

6.    The Johnson family claims that the Lies did not use the subsistence campsite after the early sixties is based on their observations during visits to the site. Since they did not use the site on a full time basis, their observations do not provide adequate information to negate the use testimony considered in number five above nor to conclude that the Lies did not use the site.

7.    The Lies did not abandon the campsite even though they used the area much less after the early seventies.

8.    The KIC policy setting forth a one-acre maximum size limitation on 14(c)(1) subsistence campsites is consistence with the intent of the 14(c)(1) subsistence campsite provision and other Native corporation 14(c) policies.

- 9 -

Exhibit _2_
Page _9_ of _17_.

9.    Under ANCSA Section 14(c)(1) authority, the structures on and the use of the Lies' 14(c)(1) subsistence campsite do not justify conveyance of a larger parcel.

## Hearing Officer Recommendations:

Based upon the above analysis, findings, and conclusions, it is recommended that the KIC Board of Directors:

1.    Uphold the original 14(c)(1) decision on the Lie subsistence campsite claim regarding the conveyance of one acre on Chairtree Island as originally defined by the KIC land manager; and

2.    Disapprove the Lie appeal requesting the conveyance of Chairtree Island in its entirety or the conveyance of additional acreage on Chairtree Island using the ANCSA section 14(c)(1) subsistence campsite authority.

In view of the Lies long-term belief that they owned Chairtree Island, the KIC Board of Directors may wish to take some action which assures the Lie family nonexclusive subsistence and personal recreation use rights to the rest of the island, except for lands included in any 14(c)(1) conveyance to the Johnson family.

DATED this 9th day of March, 1994.


                                    David G. Hanson
                                    Hearing Officer
                                    Arktos Associates
                                    1600 A Street, Suite 309
                                    Anchorage, Alaska   99501
                                    (907) 276-8827


- 10 -

Exhibit  2
Page  10  of 17

## Johnson Appeal

### Introduction:

Mabel Johnson submitted a 14(c)(1) application for a subsistence
campsite on Chairtree Island on February 3, 1992.  On August 26,
1993, Mr. Willie Goodwin, Jr. sent Mabel Johnson a letter informing
her that the 14(c) committee had approved her 14(c)(1) subsistence
campsite application and the conveyance of an 80 foot by 100 foot
subsistence campsite parcel. Karen P. Gallahorn submitted a letter
to Willie Goodwin on behalf of Mabel Johnson on October 11, 1993
which appealed the decision of the 14(c) committee.

Two appeal hearings were held to examine the Johnson appeal.  The
first hearing was held in Kotzebue at the Alaska Technical Center
Library at 1:30 p.m. on February 7, 1994.  Ms. Karen Gallahorn
represented the Johnson family.  Mr. Willie Goodwin and Mr. Ed
Busch represented KIC.  The second appeal hearing was held in
Anchorage at the Arktos Associates offices at 1600 A Street, Suite
309, on February 9, 1994.  Ms. Mabel Johnson, Ms. Debbie Higgins,
and Mr. Mark Higgins represented the Johnson family and Mr. Willie
Goodwin and Mr. Ed Busch represented KIC.

### 14(c)(1) Status:

Based on the Johnson family use of the land as a subsistence
campsite, KIC approved the Johnson's subsistence campsite
application and granted an 80 foot by 100 foot subsistence campsite
around a cabin Dave Johnson built in 1964 and/or 1965.

### Basis of Appeal:

Mabel Johnson appealed the KIC decision on the parcel size of the
approved subsistence campsite parcel.  The Johnson family believes
that out of fairness, their subsistence campsite parcel should be
enlarged from 80 feet by 100 feet (approximately one-fifth acre) to
a full acre.  Ms. Johnson also appealed the decision to protect her
parcel from the Lie appeal which was asking for all of Chairtree
Island.  During the Anchorage hearing, Johnson family
representatives also indicated their interest in acquiring part of
the cleared area included in the Lie parcel as an addition to their
parcel.  As part of their appeal, the Johnson family questioned
whether the Lie family had adequately used the cleared area as a
subsistence campsite to justify approval of their parcel.  During
the hearings, Johnson family representatives provided additional
information regarding their use of the island and indicated they
had not seen the Lie family use the adjacent parcel.

- 11 -

Exhibit   2
Page  11  of  12

Appeal Considerations:

. Permission to Use Campsite

The Lie appeal letters and hearing testimony indicated that Dave
Johnson asked Harold Lie's permission to build his cabin and use
the campsite on Chairtree Island.   During the Anchorage Lie
hearing, Nina Lie indicated Harold Lie gave Dave Johnson permission
as long as Harold Lie could use the cabin when Dave was not there.
Testimony during the Johnson appeal hearings by Johnson family
representatives confirmed that Dave Johnson asked permission to
build the cabin and use the site.   No one disputed that Dave
Johnson asked permission to use the island based upon the
impression that Harold Lie owned the island.

2.    Johnson Family Use of Chairtree Island

The KIC 14(c) policies provide criteria regarding use of a
subsistence campsite parcel during 1971.   These criteria are as
follows.

    The applicant shall demonstrate that as of December 18, 1971:

    (1)  the applicant, or the party through whose use the claim
    arises, physically occupied a parcel on a regular seasonal
    basis as a campsite and base for engaging in subsistence
    activities for a substantial period of time during 1971;

    (2)  there were improvements located on the parcel related to
    subsistence activities such as trap line cabins, caches, fish
    racks, tent frames, etc.;

    (3)  if no improvements existed, the applicant shall submit
    sworn statements from at least two non-related persons
    substantiating the use of the parcel by the applicant;

    (4)  that the parcel was used as a subsistence campsite
    exclusively by the applicant or the applicant's immediate
    family;

    (5)  the applicant traditionally engaged in subsistence
    activities and was dependent on these activities for a
    substantial portion of his livelihood.

During 1964 and/or 1965, Dave Johnson built a cabin on Chairtree
Island.   The 14(c) application, appeal submissions, and hearing
testimony indicates Dave Johnson's family used the cabin site for
subsistence activities during the sixties and into the seventies.
A letter from Ms. Mabel Johnson to Mr. Willie Goodwin, Jr. dated
February 29, 1992, confirms subsistence campsite use of the land
from 1961 through 1977 when the family left Kotzebue.   The use of
the cabin by the Johnson family during this period was not disputed

- 12 -

Exhibit   7
Page   12 of  17

by the Lie family but it was indicated that Dave Johnson used the
land with Harold Lie's permission.  Dave Johnson's use of the
sland dropped substantially after he left Kotzebue in 1977.

The Johnson family provided additional information regarding their
use of the land during the hearing and as submissions to the
hearing record.  These included discussion of site use, two letters
submitted to the hearing record, 1976 and later pictures of site
use, stories written at the site in the mid to late seventies, and
some slides of friends on or near the site in 1971.  Other slides
of activities on or near the site during the sixties were also
reviewed at the Anchorage hearing.  During the Anchorage hearing
and in a February 14th letter, Mabel Johnson indicated that her
family used the cleared area included in the Lie parcel and that
Dave Johnson constructed a new tower on the cleared area during the
sixties.

3.    Abandonment Possibility

The September 27, 1993 Lie appeal letter indicates the Johnsons no
longer use the island.  The fact that Dave Johnson and his family
left Kotzebue and moved out of the region in 1977 raises the
possibility of volunteer abandonment of the cabinsite.  However,
the fact that Dave Johnson returned to the site in 1978 and a few
times between 1978 and his death in 1989 indicate continued
interest in the site.  This impression is reinforced by Karen
Gallahorn's request for permission from Dave Johnson to add on to
the cabin in 1985.  The fact that this permission was granted in a
July 10, 1985 letter by Dave Johnson indicates that it was not his
intention to abandon the cabin site.  Since that time, it appears
that Karen Gallahorn acted as his representative as she continued
to use the cabin.

4.    Size and Location of Parcel

The KIC 14(c) policies specify direction and criteria for
determination of the size of subsistence campsite parcels.  This
policy direction is set forth below.

    The size of the parcel shall not exceed the amount of land
    actually used and necessary for a campsite or temporary
    dwelling while engaged in subsistence activities.  The maximum
    size of a parcel shall be no larger than one acre in
    size. . . .

    In determining parcels and sizes of parcels to be conveyed as
    subsistence campsites the following shall be considered:

    (1)  Only land used as a campsite or a base from which
    subsistence activities were conducted shall be conveyed.
    Lands actually used for such activities as hunting, trapping,
    berrypicking, timber or wood harvesting shall not be conveyed:

                              - 13 -

Exhibit  2
Page  13  of  17

(2)  Lands must have been used exclusively by an applicant or the applicant's immediate family.  Lands used by several families or by many community members will not be conveyed to an individual or individuals;

(3)  Subsistence campsites parcels shall not be conveyed for non-subsistence hunting and fishing activities;

(4)  Parcels shall not be conveyed for hiking, dogsledding, snowmachining or other off-road vehicle routes or use areas.

The criteria regarding the size of the subsistence campsite place emphasis on only conveying the land used as a campsite or a base from which subsistence activities were conducted.  Lands used for actual subsistence activities such as hunting, trapping, berrypicking, etc., are not to be conveyed.  KIC was apparently taking this policy into consideration when it determined that the parcel size would be 80 feet by a 100 feet including the immediate curtilage around the cabin built by Dave Johnson.  This is consistence with the policies of other Native corporations and court decisions such as the Hakala, et al. v. Atxam Corporation decision.

The Johnson family testimony and submissions to the record, however, provide information which may indicate that the family used part of the cleared area as an extension of their subsistence campsite.  The information that Dave Johnson built a new lookout tower in the clearing and that at times a Johnson family tent was rected in the clearing indicates subsistence campsite use.  During the appeal hearings and in their final appeal submission, the Johnson family requested that a portion of the clearing be added on to their site based upon the construction of a new lookout tower and use of the area.

It is logical to assume that on occasion the Johnsons used the cleared area immediately adjacent to their cabin site.  It is also clear that use of this area would be in conflict with the parcel defined for conveyance to the Lie family.

5.   Conflicting Parcel Claims.

KIC's 14(c) policies set forth decision criteria for dealing with conflicting parcel claims on page 13.  These criteria are set forth below.

(3)  Conflicting claims

Where there are conflicting claims for the same tract of land, the following factors will be considered in determining the validity and priority of the applications.

- 14 -

Exhibit   2
Page  14  of  17

(a)  the party who first commenced the use of the tract and
was utilizing it through December 18, 1971;

(b)  the manner in which the tract was utilized and the
frequency of the utilization;

(c)  the extent to which the tract was utilized after December
18, 1971 and whether there was a voluntary abandonment of the
use or a claim to title arising from such use;

(d)  whether permission was sought from one of the claimants
for the use of the tract;

The use of a tract by an individual with the permission of the
applicant during the same general time period shall not result
in the denial of the claim of an applicant.

The criteria set forth several factors to be considered in
determining the priority of applications for conflicting use areas.
Both the Lie and Johnson claims satisfy certain of those factors.
Both claimants claimed to have utilized the cleared area or parts
of the cleared area through December 18, 1971 and both claimants
were utilizing it for a subsistence campsite. Neither claimant has
voluntarily abandoned their specific parcel or the overlap area.
The Johnson family might argue that they have utilized the parcel
more frequently than the Lie family, especially since the early
seventies. However, the appeal process did not specifically focus
on frequency of use in 1971 or place emphasis on rigorous
documentation of specific use instances. The Lie family did
commence use of the tract first.

A key consideration is whether one claimant requested permission
from the other claimant to use the area. In this case, Dave
Johnson asked permission from Harold Lie to use the land and build
a cabin on the land. This permission request indicates a
recognition that Harold Lie had an ownership right or use right for
the land and also is an important factor in establishing conveyance
priority for the cleared area. The importance of the permission
factor is emphasized by the last line of the conflicting claims
criteria which states that the use of a tract by an individual with
the permission of the applicant during the same general time period
shall not result in the denial of the claim of an applicant.
Consequently, though the Johnsons may have used the parcel more
often, the fact that the Lies commenced use on the parcel, and that
the Johnsons asked permission from the Lies to use the parcel,
argues that the Lies' claim on the cleared area should take
precedence over the Johnson's claim to a portion of the cleared
area. The Lie's priority rights for the cleared area would be
limited to the one acre area of their previously defined
subsistence campsite due to the KIC 14(c) Policy one acre site size
limitation. Consequently, site priority rights based upon the

- 15 -

Exhibit  2
Page 15 of 17

permission request would not impact the Johnson cabin parcel
located outside the Lie one acre parcel.

Findings of Fact and Conclusions.

1.    Dave Johnson requested and received permission from Harold Lie
to use the island for a subsistence campsite and to build a cabin
on the island.

2.    The Johnson family did use the parcel of land surrounding the
cabin for the purposes of building a cabin and to occupy this cabin
as a subsistence campsite.  The Johnsons adequately used the cabin
site as a subsistence campsite during the sixties and seventies to
meet the intent of the 1971 subsistence campsite use requirement
and to justify a 14(c)(1) subsistence campsite conveyance.

3.    The Johnson family did not voluntarily abandon the cabin site
after Mr. and Mrs. Johnson left Kotzebue in 1977.  This is born out
by Mr. Johnson's return to the cabin site in 1978 and on a few
occasions the following decade, Karen Gallahorn's recognition that
she needed to get permission from Dave Johnson to build onto the
cabin, and Dave Johnson's letter of permission to Karen Gallahorn.

4.    It is logical to assume that the Johnson family used portions
of the cleared area adjacent to their parcel.  Though it has not
been verified by the other parties to this appeal, it is recognized
that the Johnsons claim to have built the lookout tower in the
cleared area.

5.    Any claim the Johnsons have to the cleared area included
within the one acre Lie 14(c)(1) parcel boundaries, is in conflict
with the Lie 14(c)(1) claim.

6.    Using the factors set forth in the decision criteria of the
KIC 14(c) policies, priority for conveyance of the cleared area
within the one-acre parcel previously delineated as the Lie's
subsistence campsite must be with the Lie family and should not be
infringed upon by the Johnson claim.

7.    Since it appears that the Johnsons built a lookout tower
structure outside of their one-fifth acre cabin parcel on part of
the cleared area which is not available for conveyance to them, it
may be appropriate to add additional land to the Johnson cabin site
parcel which does not conflict with the Lies' subsistence campsite
parcel.

8.    The Johnson family provided information on portions of the
clearing that they used in their final written submission to the
hearing record.  The hearing officer is not adequately familiar
with the parcels to determine how much land was involved in the
additional area described by the Johnsons.  If a decision is made

- 16 -

Exhibit  2
Page  16  of  17

to add additional land to the Johnson cabin site parcel, the size of the additional area described in the written submission may be good indicator of the amount of land which should be added to their cabin parcel outside of the Lie's one-acre subsistence campsite.

Hearing Officer Recommendations.

Based upon the above analysis and findings, it is recommended that the KIC Board of Directors:

1.  Uphold the original 14(c)(1) decision on the Lie 14(c)(1) claim regarding the conveyance of one acre of land on Chairtree Island as originally defined by the KIC land manager;

2.  Approve the Johnson appeal regarding the addition of additional land to the previously designated 80 foot by 100 foot cabin site such that the final parcel does not exceed one acre and does not conflict with the previously designated Lie parcel; and

3.  Determine the amount of land to be added to the Johnson parcel by considering the land use area defined in the February 14, 1994 letter to the hearing officer from Mabel Johnson.

It should be recognized that the recommendation regarding the addition of land to the 80 foot by 100 foot Johnson cabin site parcel is not specifically mandated by KIC 14(c) policies and falls into a gray area of interpretation and fairness.

DATED this 9th day of March, 1994.


David G. Hanson
Hearing Officer
Arktos Associates
1600 A Street, Suite 309
Anchorage, Alaska 99501
(907) 276-8827

- 17 -

Exhibit 2
Page 17 of 17