+Samuel J. Fortier
FORTIER & MIKKO, P.C.
101 W. Benson Blvd., Ste 304
Anchorage, AK 99501
Phone (907) 277-4222
Fax (907) 277-4221
Attorneys for Sharron Lie

FORTIER & MIKKO, P.C., A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MABEL JOHNSON, by Debra Higgins, her Next Friend and Daughter, and KARAN GALLAHORN, ) ) ) ) | |
| Plaintiffs, ) | Case No. A05-110 CV (JKS) |
| vs. ) ) | |
| KIKIKTAGRUK INUPIAT CORPORATION, ) and SHARRON LIE, ) ) | |
| Defendants. ) ) | **OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

COMES NOW Defendant SHARRON LIE, by and through counsel, and hereby

opposes Plaintiff's Motion for Summary Judgment, as follows:

## I.    INTRODUCTION

The Plaintiffs (or Gallahorn) are seeking summary judgment on Karan Gallahorn's

claim that Kikiktagruk Inupiat Corporation ("KIC"), through its land manager, made an

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.,* Case No. A05-110 CV (JKS)
Page 1 of 17

enforceable promise that she could build a new structure on Chairtree Island anywhere within an 80 x 100 foot rectangle that enclosed an existing cabin that Plaintiffs were to receive as a subsistence campsite pursuant to Section 14 (c)(1) of the Alaska Native Claims Settlement Act ("the Act").[1] Because genuine issues of material fact exist, Plaintiffs' motion must fail.

## A.    Statement of Genuine Issues of Material Fact

1.    Willie Goodwin, the (former) land manager, denies that he gave Karan Gallahorn permission to build a cabin, or that he had authority to tell her where she could build a cabin, directly contradicting a key point underlying the Motion for Summary Judgment.

2.    Willie Goodwin testified that there was an agreement that the boundary would be a line half way between the Johnson cabin and the Lie cache. The current land manager, Ernest Norton, stated that the KIC board approved a subsistence campsite with the same agreed upon boundary. Karan Gallahorn's building is not in the agreed-upon boundary.

3.    Even assuming Ms. Gallahorn's statements about Mr. Goodwin's promise are true, she did not build the cabin within the 80 x 100 foot template.

4.    Even assuming Ms. Gallahorn's statements about Mr. Goodwin's promise are true, she could not have reasonably relied on the statements of a land manager when the KIC Board of Directors adopted the findings and conclusions of an independent hearing officer

---

[1] 43 U.S.C § 1616(c)(1).

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.,* Case No. A05-110 CV (JKS)
Page 2 of 17

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

5.      Even assuming Ms. Gallahorn's statements are true, she could not reasonably rely on Mr. Goodwin's map to place her cabin on the foundation of the Lie cabin and the heart of the Lie campsite.

**B.      The Alaska Native Claims Settlement Act**

This case involves the application of reconveyance obligations of a village corporation under the Act pursuant to Section 14(c)(1).  43 U.S.C. §1613(c)(1).

Under Section 11 the Act, the land surrounding the Native Village of Kotzebue was withdrawn from all forms of appropriation under the public land laws.  43 U.S.C. § 1611. The native villages formed village corporations, pursuant to Section 8 of the Act, 43 U.S.C. § 1607.  The village corporations were entitled to select lands surrounding their village under Section 12.[2]

Pursuant to Section 12 of the Act, villages were entitled to select between 69,120 acres to 161,280 acres, depending upon the size of the village.  43 U.S.C. § 1611(a).

Under Section 14(c)(1), the villages' conveyances were subject to the requirement that the villages had to reconvey title to subsistence campsites occupied on December 18, 1971:

> 1.     The village corporation shall first convey to any native or non-native occupant, without consideration, title to the surface estate and the tract occupied as of December 18, 1971 (except the occupancy of

---

[2] 43 U.S.C. § 1611(a)(1).  All of the township or townships in which any part of the village is located, plus an area that will make total selection equal to the acreage to which the village is entitled under section 14.

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.,* Case No. A05-110 CV (JKS)
Page 3 of 17

FORTIER & MIKKO, P.C.  A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4221 FAX LINE (907) 277-4221

> tracts located in the Pribilof Islands shall be determined as of the date of initial incorporation of such tracts to the appropriate village corporation as a primary place of residence, or as a primary place of business, or as a subsistence campsite, or as headquarters for reindeer husbandry.

Under Section 25 of the Act, the Secretary of the Interior is authorized to issue, "[s]uch regulations as may be necessary to carry out the purposes of the act." 43 U.S.C. § 1624.

The implementing regulations require that surveys be made within village corporation selections to delineate those tracts required by law to be conveyed by the village corporations pursuant to section 14(c) of the Act.[3]

The boundaries of the selections, "[s]hall be posted on the ground and shown on the map which has been approved in writing by the affected village corporation and submitted to the Bureau of Land Management. Conflicts arising among potential transferees identified in Section 14(c) of the Act, or between the village corporations, and such transferees will be resolved prior to submission of the map."[4]  Surveys do not begin, "[p]rior to final written approval of the map by the village corporation and the Bureau of Land Management. After such written approval, the map will constitute a plan of survey.  Surveys will then be made in accordance with the plan of survey."[5]

---

[3] 43 C.F.R. 2650.5-3(b).

[4] 43 C.F.R. 2650.5-3(c)(1).

[5] *Id.* at (c)(2).

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.,* Case No. A05-110 CV (JKS)
Page 4 of 17

FORTIER & MIKKO, P.C.  A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

FORTIER & MIKKO, P.C.   A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

## C.    Statement of Facts

For the purposes of this Opposition, Ms. Lie adopts the findings and conclusions of the independent hearing officer, David Hanson, who on February 7, 1994 and February 9, 1994 heard two interlocking appeals of 14 (c)(1) determinations made by KIC, pursuant to its 14 (c)(1) policy. Exhibit 1. These findings and conclusions were adopted by the KIC Board of Directors on March 13, 1995. Exhibit 2.

In March 1995, KIC informed Plaintiff Mabel Johnson that the Board voted to accept the recommendation of the hearing officer approving a parcel of land 80 x 100 "as described in your application and in the staff recommendation to the Board. KIC will include this parcel in the 14 (c) map of boundaries". Exhibit 3   The letter said, "Following review and approval of the map of boundaries, BLM will survey the parcel at no cost to you.  We anticipate this will be within 1-2 years after the map of boundaries has been approved by BLM." *Id.*

In 1997 and 1998 Karan Gallahorn, an assignee of Mabel Johnson, had a Kotzebue resident, Vern Richards, build the cabin on Chairtree Island which is the subject of this dispute. Karan Gallahorn Affidavit, para. 10.

In December 2002, KIC land manager, Ernest Norton, wrote a letter that informed Ms. Gallahorn that the KIC Board met in November 2002 and reaffirmed its decision of March 13, 1995 in which "[The Board] approved the subsistence campsite application for

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.,* Case No. A05-110 CV (JKS)
Page 5 of 17

FORTIER & MIKKO, P.C.   A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

one acre of Sharon and Nina Lie and a subsistence campsite application of an 80'x100' for Mabel Johnson at the meeting. The agreed upon property line is half way between Lie's cache and Johnson's cabin beginning at the boat landing." (Exhibit 4). The letter included some photos of the structures on Chairtree Island and a diagram prepared based during a site visit on September 24, 2002 by KIC's then- land manager, Grant Hildreth. *Id.* The map depicts the Johnson-Lie property line half-way between the Lie cache and the old Johnson cabin. It clearly depicts the Gallahorn cabin well inside the Lie property line between the Lie cache and the water slough. *Id.*

In November 2004, Sharron Lie and Nina Lie signed a Settlement of 14 (c)(1) Reconveyance Obligation with KIC. Exhibit 5. The Lies agreed to accept the Reconveyance of Lot 21 on Chairtree Island as depicted on an attached Partial Map of Boundaries in satisfaction of their 14 (c)(1) claim. *Id.* The map places the boundary line 35.5 feet from the Johnson cabin and 35.5 feet from the Lie cache. The map is consistent with Grant Hildreth's 2002 diagram and shows the Gallahorn cabin was built completely within the Lies' lot, Lot 21.

**D.    Standard for Review**

On a motion for summary judgment where material issues of fact are disputed, the court assumes that the version of the facts asserted by the non-moving party is correct. *Motley v. Parks*, 383 F.3d 1058, 1062 (9th Cir, 2004); *Bingham v. City of Manhattan Beach,*

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.*, Case No. A05-110 CV (JKS)
Page 6 of 17

341 F.3d 939, 942 (9th Cir.2003). The Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *Sullivan v. U.S. Dep't of Navy,* 365 F.3d 827 (9th Cir. 2004).

## II.     ARGUMENT

**A.     Promissory Estoppel Requires the Existence of a Promise – The Existence of a Promise is Disputed**

Under federal law the necessary elements of promissory estoppel are as follows:

> The promissee must show (1) the existence of a promise, (2) that the promissor reasonably should have expected to induce the promissee's reliance, (3) that the promise actually induces such reliance, (4) that such reliance is reasonable, (5) that injustice can be avoided only by enforcement of the promise. *Agular v. Int'l Longshoremen's Union Local No. 10,* 966 F.2d 443 (9th Cir. 1992);

Devoll v. Verdict Painting, Inc., 35 F.3d at 408, n. 4.

Under state law the elements of promissory estoppel are stated somewhat differently:

> A promise which the promissory should reasonably expect to induce action or forbearance on the part of the promissee or a third person which doesn't do such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Glover v. Sager,* 699 P.2d 1274 (Alaska 1975).

Under either formulation the first element is the existence of a promise. In this case, the very existence of a promise is in dispute. Ms. Gallahorn says that in 1997, KIC's land manager, Willie Goodwin, made a map of an 80 x 100 foot parcel that included the Johnson

FORTIER & MIKKO, P.C.  A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.,* Case No. A05-110 CV (JKS)
Page 7 of 17

FORTIER & MIKKO, P.C.    A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4221 FAX LINE (907) 277-4221

cabin and that he said she could build anywhere within the rectangle. Mr. Goodwin affies

that he remembers the meeting and that Ms. Gallahorn was asking about making

improvements to the Johnson cabin. Affidavit of Willie Goodwin. He says that he told her

she would have to get permission from the Johnson's to make those improvements and that

he had no authority to give her permission. *Id.* He says that he did not make any map for her

and that he had no authority to tell her where she could build a cabin. *Id.* He says that he is

positive that he never gave her permission to build a cabin anywhere. *Id.*

On a summary judgment motion, the court must accept the version of the facts

presented by the non-moving party. In this case, the non-moving party has produced

evidence that there was no promise, therefore, the first element of a promissory estoppel is

not met and summary judgment must fail on these grounds alone.

**B.    Promissory Estoppel Requires Reasonable Reliance**

Under federal law, an element of promissory estoppel is the reasonableness of the

promisee's reliance on the promise. In the case of *Devoll v. Verdict Painting, Inc.*, 35 F.3d

408, 411, n. 4 (9th Cir. 2005), an employee argued that his employer breached an enforceable

promise to maintain certain medical benefits. The court said:

> Under both California and federal common law, to establish an enforceable
> contract based on promissory estoppel, the promissee must show (1) the
> existence of a promise, (2) that the promissory reasonably should have
> expected to induce the promissee's reliance, (3) that the promise actually
> induces such reliance, (4) **that such reliance is reasonable**, (5) that injustice

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.,* Case No. A05-110 CV (JKS)
Page 8 of 17

can be avoided only by enforcement of the promise. *Agular v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443 (9th Cir. 1992)

(emphasis supplied). *Devoll v. Verdict Painting, Inc.*, 35 F.3d at 408, n. 4. In *Devoll*, the court found no promissory estoppel because the alleged promise was in conflict with the written provisions regarding benefits coverage.

The State of Alaska has adopted a different formulation of promissory estoppel, the RESTATEMENT (SECOND) OF CONTRACTS, § 90 (1979), *Glover v. Sager*, 518 P.2d 763 (Alaska 1974).

Section 90(1) states in pertinent part:

> A promise which the promissory should reasonably expect to induce action or forbearance on the part of the promissee or a third person which doesn't do such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Under the Restatement, the reasonableness of the promissee's reliance is addressed in the inquiry about the last element, "[w]hether enforcement of the promise is necessary to avoid injustice."

> <u>Satisfaction of [this] requirement may depend on the reasonableness of the promissee's reliance</u>, on its definite and substantial character in relation to the remedies sought, on the formality with which the promise is made, on the extent to which the evidentiary cautionary deterrent and channeling functions of form are met by the commercial setting or otherwise, and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant . . . the force of particular factors varies in different types of case.

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.*, Case No. A05-110 CV (JKS)
Page 9 of 17

RESTATEMENT (SECOND) OF CONTRACTS § 90, comment b.  Under Alaska law "[t]he question of whether 'injustice can be avoided only by enforcement of the promise' must be treated as a question of fact."[6]

The courts will not enforce a promise where the promissee's reliance on the promise is not reasonable. *Greenberg v. Tomlin*, 816 F. Supp. 1039, 1056 (Ed. Pa. 1993) (reliance on oral promises not reasonable in light of extensive negotiations leading to written contract among sophisticated parties represented by counsel). *See Trifiro v. N.Y. Life Insurance Co.*, 845 P.2d 30, 33 (1st Cir. 1988) ("[I]f [plaintiff's] reliance is found unreasonable under the circumstances . . . these claims must fail.")

1.     **Karan Gallahorn Could Not Reasonably Rely on a Boundary Different From The Boundary That Was Agreed To In 1995**

Two former land managers of KIC stated that there was an agreement about the Johnson-Lie boundary.  The boundary was half way between the (Lie) cache and the Johnson cabin.  Exhibit 4, and Affidavit of Willie Goodwin.  As the non-moving party on summary motion, Ms. Lie is entitled to the presumption that there was such an agreement.  With such an agreement between the parties, Karan Gallahorn could not reasonably have relied on any statement made by Willie Goodwin that abrogated the agreement, the more so since it was implicitly adopted by the KIC Board of Directors on March 13, 1995.  Exhibit 2.

---

[6] *State v. First National Bank of Ketchikan*, 629 P.2d 78 n.4 (internal citation omitted).

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.*, Case No. A05-110 CV (JKS)
Page 10 of 17

FORTIER & MIKKO, P.C.  A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

2.      **Even Assuming an Enforceable Promise, The Gallahorn Cabin is Outside What Was Promised**

The Gallahorn cabin is not within the template allegedly prepared by KIC's land manager.  Ms. Gallahorn asserts:

> When Plaintiff Gallahorn asked Mr. Goodwin [KIC land manager], Mr. Goodwin instructed Plaintiff Gallahorn to stake out the boundaries of an 80 x 100 foot parcel that included the Johnson cabin within their purvey and then to site the new cabin at any location within those boundaries.  During that conversation, Mr. Goodwin drew a map on a small piece of paper.  The map enclosed the Johnson cabin inside a rectangle.  Mr. Goodwin then gave the map to Plaintiff Gallahorn and instructed her to use the map as a template for staking out the 80 x 100 foot boundaries around the Johnson cabin.[7]

Ms. Gallahorn asserts that she and Mr. Richards, a local builder, "[u]sed the map that Willie Goodwin had given to Plaintiff Gallahorn as a template to stake out an 80 x 100 foot parcel around the Johnson cabin and then selected a site within those boundaries at which Mr. Richards began constructing Plaintiff Gallahorn's new cabin."[8]  Ms. Gallahorn asserts that she "[r]elied on Mr. Goodwin's instructions and on his map when she sited the cabin on Chairtree Island…."[9]

---

[7] *See* **Affidavit of Karn Gallahorn (October 28, 2005)**, a 9 at pp. 5-6; Affidvit of Bish Gallahorn (October 26, 2005), para. 5 at pp. 3-4.

[8] *See* **Affidavit of Karen Gallahorn (October 28, 2005)**, para. 10 at pp. 6-7; Affidavit of Vernon Richards (August 5, 2005), para. 3-4 at pp. 2-3.

[9] Motion for Summary Judgment, p. 10.

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.,* Case No. A05-110 CV (JKS)
Page 11 of 17

Attached as Exhibit 6 is a survey map prepared by McClintock & Associates, provided to Ms. Lie depicting the boundaries that were adopted by the KIC Board of Directors. *See* Sharon Lie Affidavit. It is referred to as a "Partial Map of Boundaries" in the settlement document. Exhibit 5.[10] For the purposes of this discussion only, KIC's proposed boundaries are immaterial. What is significant is that the survey map is drawn to scale. The map provides in writing that it is drawn to a scale of 1 inch to 60 feet, and it depicts the scale graphically. It is, therefore, possible to measure distances with some degree of accuracy. The distance between the southern wall of the old Johnson cabin and the northern wall of the new Gallahorn cabin is 2 1/16[th] inches. Therefore, according to the scale, the distance between the most distant points of the two structures is 123 feet more-or-less. There is no way to fit the two buildings in an 80 x 100 foot parcel. Even if Mr. Goodwin drew a map that placed the Johnson cabin at the southern boundary line of the 80 x 100 foot template, Ms. Gallahorn's cabin does not fit within it. Thus, even if all of the elements of promissory estoppel are present, Ms. Gallahorn built outside the boundaries contained in the promise.

Mr. Richards and Ms. Gallahorn both affie that they built within Mr. Goodwin's template; the survey indicates that they did not. On summary judgment motion, this question of fact must be resolved in favor of the non-moving party. Ms. Gallahorn could not

---

[10] A village survey is prepared pursuant to KIC's 14(c)(1) reconveyance requirements. *See* 43 C.F.R. § 2650.5-3.

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.*, Case No. A05-110 CV (JKS)
Page 12 of 17

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

reasonably rely on a promise by Mr. Goodwin that she could build within the 80 foot x 100 foot parcel, or build outside that parcel by declaring that it was promised to her.

Promissory estoppel principles do not justify imposition of a duty to do more than was promised.[11] In this case, Karan Gallahorn is seeking even more than was promised. She was promised she could build within an 80 x 100 foot parcel, and she built outside of it. Under Alaska law she cannot seek enforcement of more than was promised.

### 3. Karan Gallahorn Could Not Have Reasonably Relied Upon the Land Manager's Template to Establish the Boundaries of her Property.

The hearing officer's report makes it quite clear that the boundaries between the 14(c)(1) parcels were in sharp dispute during the hearing, and that the Johnsons wanted a portion of the "cleared area" that they knew was within the Lie parcel. What follows are some excerpts from the hearing officer's report.

> During the Anchorage hearing, the Johnson representatives also indicated their interest in acquiring part of the "cleared area" included in the Lie parcel as an addition to their parcel. *See* Exhibit 1, pg. 11.

> During the Anchorage hearing and the February 14, 2004 letter, Mabel Johnson indicated that her family used the "cleared area" included in the Lie parcel and that Dave Johnson constructed a new tower on the "cleared area" during the 1960's.

---

[11] *See James v. State*, 815 P.2d 352 (Alaska 1991) (where the state's promises are kept, promissory estoppel principles do not justify imposition of a duty to do more than was promised). *See State v. First National Bank of Ketchikan*, 629 P.2d 78, 81-82 (Alaska 1981)").

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.*, Case No. A05-110 CV (JKS)
Page 13 of 17

FORTIER & MIKKO, P.C.    A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222  FAX LINE (907) 277-4221

FORTIER & MIKKO, P.C. A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

*Id.*, pg. 13.

It is also logical to assume that on occasion that the Johnsons used the "cleared area" immediately adjacent to their cabin site. It is also clear that use of this area would be in conflict with the parcel defined for conveyance to the Lie family.

*Id.*, pg. 14.

Consequently, although the Johnsons may have used the parcel more often, the fact that the Lies commenced use on the parcel, and that the Johnson asked permission from the Lies to use the parcel, suggests that the Lies' claim on the "cleared area" should take precedence over Johnson's claim to a portion of the "cleared area.". The Lies' property rights for the "cleared area" would be limited to the one acre area of their previously defined subsistence campsite due to the 14(c)(1) policy, one acre site size limitation. Consequently, site priority rights based upon the permission request would not impact the Johnson cabin parcel located outside the Lie one acre parcel.

*Id.*, pg. 15.

If a decision is made to add additional land to the Johnson cabin site parcel, the size of the additional area described in the written submission may be a good indicator of the amount of land which should be added to their cabin parcel outside of the Lies' one acre subsistence campsite.

The hearing officer recommended that the KIC Board of Directors:

1.    Uphold the original 14(c)(1) decision on the Lie 14(c)(1) claim regarding the conveyance of one acre of land on Chairtree Island as originally defined by the KIC land manager.

*Id.*, pg. 17.

2.    Any claims that the Johnsons have to the "cleared area" included within the one acre Lie 14(c)(1) parcel boundaries, is in conflict with Lie 14(c)(1) claim.

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.*, Case No. A05-110 CV (JKS)
Page 14 of 17

FORTIER & MIKKO, P.C.  A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

*Id.*

The use of the "cleared area" was hotly contested.  Although the lands were not identified with any precision in the decision, it is clear from the decision itself that the cleared area was outside the 80 x 100 foot parcel.  The council made a final determination and adopted the hearing officer's report.  It was not reasonable to rely on the template to occupy the cleared area when the hearing officer excluded it.

**4.    The Interest Of Justice Are Not Served Because Karen Gallahorn Could Not Reasonably Have Relied On A Template That Allowed Her To Build A Cabin On The Same Site As The Lie Foundation**

Finally, an understanding of the situation "on the ground" makes it apparent that Karan Gallahorn could not have reasonably relied on any template that allowed her to build in an area that clearly was part of the Lie's one-acre entitlement.  Access to the 14(c)(1) sites on Chairtree Island is through a slough that has a limited area to disembark and pull up a boat.  *See* Affidavit of Chris Lie.  Fred Morrison had first pick of the site since he was there first.  The Morrison cabin and the cache behind it were built at the point of best access to the slough in front of the boat pull out.  *Id.*  That is probably the reason that Mr. Johnson built to so close to the Morrison cabin and the cleared area.  Mr. Lie purchased Mr. Morrison's interest, including the house, cache and fish racks in 1959.  Mr. Lie removed the cabin from the site after the cabin was broken into and vandalized.  Mr. Lie left the other improvements,

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.,* Case No. A05-110 CV (JKS)
Page 15 of 17

FORTIER & MIKKO, P.C.   A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222 FAX LINE (907) 277-4221

the foundation (sunken 55 gallon drums that had planks lying across them), and his cache in which he continued to store, tack boards (for trapping), snowshoes, lanterns, and books. *Id.*

Ms. Gallahorn built her house on top of Mr. Lie's foundation, between the cache and the slough. She inserted herself at the best access on the slough and essentially cut the Lies off from boat access. Whatever the exact shape of the Lies' one-acre site, Ms. Gallahorn knew, or should have known, that the site included the house foundation, the cache, and access to the slough. The interests of justice cannot be construed to enforce a promise that denies to the Lies access to the parcel to which they are legally entitled, and places the Gallahorn cabin on top of the Lies' improvements.

## CONCLUSION

Karan Gallahorn's Motion for Summary Judgment on her claim of promissory estoppel must be denied. The very existence of a promise is disputed, even assuming the existence of a promise, Ms. Gallahorn could not have reasonably relied upon it to construct the home where she did.

DATED at Anchorage, Alaska this 13th day of February, 2005.

FORTIER & MIKKO, P.C.
Attorneys for Defendant
Sharron Lie

By:    /s/ Samuel J. Fortier
          Samuel J. Fortier
          ABA No. 8211115

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.*, Case No. A05-110 CV (JKS)
Page 16 of 17

**Certificate of Service**
I hereby certify that a true and correct copy
of the following document has been sent
electronically and via US mail this 13th day of
February 2006 to:

Donald C. Mitchell
1335 F Street
Anchorage, AK 99501

John E. Havelock
Law Offices
632 Christensen Drive #100
Anchorage, AK 99501


  /s/ Samuel J. Fortier

FORTIER & MIKKO, P.C.  A PROFESSIONAL CORPORATION 101 W. Benson Blvd., Suite 304
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 277-4222  FAX LINE (907) 277-4221

Opposition to Motion for Summary Judgment
*Johnson v. Kikiktagruk, et al.,* Case No. A05-110 CV (JKS)
Page 17 of 17