## HEARING OFFICER REPORT

### FOR LIE AND JOHNSON 14(c)(1) APPEALS

#### March 8, 1994

On December 17, 1993, Mr. Willie Goodwin Jr., Land Manager of the Kikiktagruk Inupiat Corporation (KIC) hired me, Mr. David G. Hanson of Arktos Associates, to serve as hearing officer for two 14(c)(1) appeals filed by Nina A. Lie and Sharron Lie, and by Mabel Johnson. I was to review the files and submitted information on each 14(c)(1) claim, hold appeal hearings and write a hearing officer report in accordance with the *KIKIKTAGRUK INUPIAT CORPORATION Policies and Procedures ANCSA Section 14(c)(1) and Section 14(c)(2) Reconveyances* (KIC 14(c) policies). The hearing officer report was to consider the written information in the record, information gained during the hearings, and any additional written submissions. The report was also to include findings of fact regarding each appeal and a recommendation to approve or disapprove the appeal. The hearing officer report was to be submitted within thirty days of the close of the hearing. The specified tasks have been completed in accordance with the KIC 14(c) policies.

The appellant parties, Nina and Sharron Lie, and Mabel Johnson, appealed KIC decisions regarding the size of their adjacent 14(c)(1) subsistence campsites on Chairtree Island. Chairtree Island is located in the Noatak River approximately thirty miles from Kotzebue. The two subsistence campsites are the only 14(c)(1) parcels on the island and the appeals are interrelated since increasing the size of either party's parcel could impact the other party's parcel.

Following a review of each party's 14(c)(1) files and appeals, two appeal hearings were scheduled and held on each appeal. The Lie appeal hearings were held in Anchorage on February 1, 1994 and in Kotzebue on February 7, 1994. The Johnson appeal hearings were held in Kotzebue on February 7, 1994 and in Anchorage on February 9, 1994.

All of the hearings were recorded for information purposes but the recordings did not represent an official hearing record. Since the two appeals were interrelated, both parties observed the other party's hearing in Kotzebue. Tapes of all hearings were duplicated and made available to representatives of both parties and KIC. Since new information was provided in the final hearings, submitted written documents as well as the tapes were made available to all parties, and the hearing was not officially adjourned until 5:00 p.m. February 14, 1994, to provide an opportunity for final written comments. Materials hand delivered or postmarked by the 5:00 p.m. February 14 deadline were considered part of the hearing record. Both appellants submitted additional comments by the February 14, 1994 deadline.

Exhibit _____1_____
Page ___1___ of __1__
VORTIER & MIKKO

Written communications regarding hearing logistics and scheduling
are included in the hearing record which has been provided to KIC.
Attendance lists for each of the hearings including observers, the
original hearing tapes, and appellant submissions are also included
in the record.

This report presents separate sections on the Lie and Johnson
appeals. However, since the appeals are interrelated, information
from one party's hearings relevant to the other party's appeal is
appropriately considered in the separate appeal analyses.
Following an introduction, each appeal narrative addresses the
14(c)(1) application status, the basis of the appeal, appeal
considerations, findings of fact and conclusions, and hearing
officer recommendations.

- 2 -

Exhibit___1_____
Page__2__of_11__
PORTIER & MIKKO

<u>Lie Appeal</u>

<u>Introduction:</u>

Ms. Nina A. Lie and her daughter, Ms. Sharron J. Lie, applied to
KIC for a 14(c)(1) subsistence campsite on Chairtree Island on
February 2, 1992. On August 26, 1993, Mr. Willie Goodwin, the Land
Manager for KIC, sent a letter to the Lies informing them that the
KIC 14(c)(1) committee had determined that their subsistence
campsite application fulfilled the criteria of the KIC 14(c)(1)
policies and that based on field surveys and land staff
recommendations determined that the size of their subsistence
campsite parcel would be one acre. On September 27, 1993, the Lies
sent a letter to Mr. Goodwin appealing the 14(c) committee's
decision to grant them only one acre for their subsistence
campsite. The appeal letter argued that they should receive a
larger parcel and implied that that parcel possibly should include
all of Chairtree Island.

Two hearings were held on the Lie appeal. The first hearing was
held at 2:00 p.m. on February 1, 1994 in Room 290 at Providence
Hospital in Anchorage, Alaska. Ms. Nina Lie and her daughter Susan
Lie represented the Lie family and Mr. Willie Goodwin represented
KIC at the Anchorage hearing. The second hearing was held at 9:00
a.m. on February 7, 1994 at the Alaska Technical Center Library in
Kotzebue, Alaska. Ms. Sharron Lie, Ms. Zonna Lie and Mr. Chris
Lie, represented the Lie family and Mr. Willie Goodwin and Mr. Ed
Busch represented KIC at the Kotzebue hearing. Additional written
information submitted during these hearings included a February 1,
1994 letter from Nina Lie to KIC appointing her daughter as a
personal representative during the Kotzebue 14(c) hearing on
Chairtree Island; a copy of a quitclaim deed dated June 25, 1959
from Fred H. Morrison granting Chairtree Island to Mr. Harold J.
Lie; a copy of the articles of incorporation of the Kikiktagruk
Inupiat Corporation; and seven letters written by acquaintances on
behalf of Nina Lie regarding the ownership and use of Chairtree
Island by the Lie family. Zonna Lie and Sharron Lie also submitted
a letter with additional information by the February 14, 1994
deadline.

<u>14(c)(1) Application Status:</u>

KIC has granted a one-acre subsistence campsite around the long-
term campsite structures and related clearing on Chairtree Island
to the Lie family. The one-acre campsite does not include the
lands immediately around a cabin built by Dave Johnson. KIC
granted the one-acre subsistence campsite based on the Lie family
use of the land and the existing structures. It is also assumed
that KIC's decision took into consideration the family's long-held
belief that they owned the island.

- 3 -

EXHIBIT
Page 3 of 17
PORTIER & MIKKO

Basis of Appeal:

The Lie family believes their subsistence campsite should be larger
than one acre.   During hearings and in their February 14, 1994
letter, the family requested conveyance of all of Chairtree Island.
The appeal argues that since Harold Lie purchased and received a
quitclaim deed for the island and since the family has believed the
deed was valid until recent times, KIC should convey the island to
Nina and Sharron Lie.   The appeal also indicates that Dave Johnson
was given permission by the Lies to build his cabin on the island
and it further questions the appropriateness of the Mabel Johnson
14(c)(a) subsistence campsite claim.   During the hearing process,
the Lie family provided additional information regarding their use
of the island.


Appeal Considerations:

1.    Validity of Lie Quitclaim Deed

Mr. Fred H. Morrison submitted a homestead application to the U.S.
Department of Interior, Bureau of Land Management (BLM) for all of
Chairtree Island in 1956.   Under the application, Mr. Morrison had
to complete certain prove up requirements to gain title to the
land.   When he sold the island by quitclaim deed to Harold Lie for
$500.00 in 1959, he had not yet completed the prove up requirements
and thus did not own the island.   Since a quitclaim deed only
conveys to the grantee whatever interests or rights the grantor
might have, the only rights he could convey were the homestead
application rights.

When Harold Lie purchased the quitclaim deed from Mr. Morrison, he
apparently believed that Mr. Morrison had valid title to the
island.   Consequently, the prove up requirements were never
completed and BLM vacated the homestead claim and closed out the
homestead application file in 1962.   BLM's action effectively
terminated any rights to the island which may have been transferred
as part of the quitclaim deed.

Accordingly, the quitclaim deed did not validly transfer ownership
of the island to Harold Lie since Fred Morrison never owned the
island.   BLM's official conveyance of the island to KIC by Interim
Conveyance #544 provided KIC with clear ownership and title to the
island.   This analysis is based upon a review of the information
provided by BLM and Mr. John Havelock, Esq. included in the Lie
14(c)(1) file.

2.    Lie Family Belief Deed Was Valid

In 1959, the Lie family believed they purchased the island for
$500.00 from Fred Morrison and that the quitclaim deed conveyed
ownership rights.   The family managed the island as their property,

- 4 -

removed a building from the island, and specifically gave
permission to others to use the island. Other people recognized
the Lie's ownership of the island and according to the hearing
testimony and the seven letters in the file asked the Lies for
permission to use the island. Mr. Dave Johnson, husband of Mabel
Johnson, requested and received permission from Harold Lie to build
a cabin on the island and use it as a campsite. The Lie family did
not submit an allotment application for the island since they
believed they already owned it.

The Lie family first realized the deed may not be valid in 1985 or
1986 when Harold Lie was informed by the KIC land manager that KIC
owned the land and that the quitclaim deed was not valid.
Following this discussion, the Lie family apparently was still
confused regarding the status of their ownership rights and the
quitclaim deed.

3.   Lie Family Use of Island

The KIC 14(c) policy sets forth criteria for the reconveyance of
subsistence campsites. These criteria are restated below.

    The applicant shall demonstrate that as of December 18, 1971:

    (1) the applicant, or the party through whose use the claim
    arises, physically occupied a parcel on a regular seasonal
    basis as a campsite and base for engaging in subsistence
    activities for a substantial period of time during 1971;

    (2) there were improvements located on the parcel related to
    subsistence activities such as trap line cabins, caches, fish
    racks, tent frames, etc.;

    (3) if no improvements existed, the applicant shall submit
    sworn statements from at least two non-related persons
    substantiating the use of the parcel by the applicant;

    (4) that the parcel was used as a subsistence campsite
    exclusively by the applicant or the applicant's immediate
    family;

    (5) the applicant traditionally engaged in subsistence
    activities and was dependent on these activities for a
    substantial portion of his livelihood.

Based upon the hearing testimony, the Lies used the subsistence
campsite for subsistence berrypicking and hunting often in the
early sixties. During the mid to late sixties and early seventies,
the family continued to use the area for subsistence hunting and
berrypicking. Since they had removed the main cabin, tents were
used for overnight trips and day trips were often taken by boat,
snowmachine, or plane. This is supported by the 14(c) subsistence

- 5 -

Exhibit____1____
Page__5__ of _17_
PORTIER & MIKKO

campsite application information, the affidavit signed by Charlie
Sour, Sr., comments made during the hearings by Nina Lie and her
family, letters provided to the hearing record, and the KIC land
manager's comments during the hearing that the Lie family use of
the land was not in question.  It should also be noted that KIC has
already determined that adequate use took place in the 1971 period
to justify conveyance of this subsistence campsite and that the
subject of the appeal is not use of the campsite but rather the
amount of area to be conveyed.

Based upon the information provided in the hearing process, it
appears that the Lie family does meet the KIC subsistence campsite
criteria.  The application, Mr. Sour's affidavit, and comments and
letters from Nina, Susan, Sharron, and Zonna Lie confirm that the
family was using the area as a subsistence campsite during 1971 and
adjacent years.  Traditional subsistence campsite improvements are
located on the parcel which were present in 1971 and the Lies added
minor improvements such as a swing.  The campsite was recognized as
belonging to the Lies and other users asked the Lies' permission
which reflects recognition of the applicants' exclusive rights.
The 14(c) application and the hearing record indicate that the
applicant was engaged in subsistence activities and dependent upon
such activities for a portion of their livelihood.

The hearing record indicates that the Lie family used the site less
after the mid-seventies.  The children would still go down for
overnights and to ptarmigan and rabbit hunt.

4.   Johnson Questions Regarding Lie's Use of Land

During   the   Johnson   appeal   hearings,   family   members   and
representatives   made   statements   and   submitted   letters   which
questioned the Lie family's use of the subsistence campsite.  The
statements claimed that during visits to Dave Johnson's cabin,
family members did not see the Lies use their adjacent campsite nor
did they see any sign that the Lies had visited the island.  It was
noted that the Johnsons did not live on the island and were not on
the island on a full time basis.  The Johnsons built a cabin on the
island with the permission of Harold Lie during the sixties and
their   visits   were   primarily   for   subsistence   and   recreation
activities.

In reviewing the Johnson family statements and questions, the
importance of the 1971 vesting date should be acknowledged.  Much
of the Johnson representative's testimony at the Kotzebue hearing
focused on the use of the land after the early seventies.  In a
14(c) determination, the key use periods are before and through
1971.  Use of the land in the early seventies may help establish a
use pattern through the 1971 period, but site use information after
the early seventies is mainly relevant to voluntary abandonment
considerations.  During the Anchorage hearing, the Johnson family
did address use of the area during the sixties and early seventies.

Exhibit __1__
Page __6__ of __12__
PORTIER & MIKKO

Since both the Lies and Johnson are appealing to increase the size of their parcels and an increase in one parcel could impact the other party's parcel, an inherent conflict of interest exists. The Johnson family's comments and questions regarding the Lies' use of the island, to a certain extent, sets one party's word against another party's word. It should also be noted that, due to the hearing schedule, the Johnson family raised questions regarding the Lie family's use of the land after the conclusion of the Lie family hearings. Thus, the Lie family did not have an opportunity to verbally respond to the questions, but did respond through their February 14, 1994 written submission.

Though the Johnsons have made strong statements, the Lie family has also made statements and submitted information regarding their use of the island. Taking into consideration the Johnson family's part time use of the island, the Lie family testimony, the KIC Land Manager's statements, and other information in the record, the Johnson family's statements are not adequate to invalidate the information regarding the Lies' use of the site.

## 5.    Abandonment Possibility

The record indicates that the Lies used the site significantly less after the mid-seventies. A concern could be raised that the Lies abandoned the site since their use of it significantly diminished. This approach does not stand scrutiny, however, since the Lies did continue using the site to some extent and the family assumed they owned the island and did not try to sell it. The family's intent to continue to use the site and to assert ownership rights is clear and an abandonment principle does not apply.

## 6.    Size of Conveyance

The purpose of the Lie appeal was to increase the size of the subsistence campsite granted by KIC. KIC 14(c) policies provide specific guidance and criteria regarding subsistence campsite size. This guidance and criteria are set forth below.

   The size of the parcel shall not exceed the amount of land actually used and necessary for a campsite or temporary dwelling while engaged in subsistence activities. The maximum size of a parcel shall be no larger than one acre in size. . . .

   In determining parcels and sizes of parcels to be conveyed as subsistence campsites the following shall be considered:

   (1) Only land used as a campsite or a base from which subsistence activities were conducted shall be conveyed. Lands actually used for such activities as hunting, trapping, berrypicking, timber or wood harvesting shall not be conveyed;

Exhibit ___
Page ___ of ___
PORTIER & MIKKO

(2)  Lands must have been used exclusively by an applicant or the applicant's immediate family.  Lands used by several families or by many community members will not be conveyed to an individual or individuals;

(3)  Subsistence campsites parcels shall not be conveyed for non-subsistence hunting and fishing activities;

(4)  Parcels shall not be conveyed for hiking, dogsledding, snowmachining or other off-road vehicle routes or use areas.

The policies indicate that the purpose of a 14(c)(1) subsistence campsite conveyance is to convey only the area used and necessary for a campsite or temporary dwelling while engaged in subsistence activities.  It further states that only land used as a campsite or a base from which the subsistence activities were conducted shall be conveyed.  It also specifies that land used for activities such as hunting, trapping and berrypicking, etc. shall not be conveyed. The purpose of a 14(c)(1) subsistence campsite conveyance is obviously not for large land grants or to convey general use areas.

The KIC subsistence campsite policies and criteria are consistent with the _Hakala, et al. v. Atxam Corporation_ decision regarding primary place of business sites for guide operations.  The decision emphasizes that the primary place of business site should be no larger than the site structures and the curtilage around those structures.

The KIC 14(c) policies limit subsistence campsites conveyances to a maximum of one acre.  This limitation reflects the purpose of the subsistence campsite conveyance and is in line with similar size restrictions for subsistence campsites used by other Native corporations.  It should also be noted that KIC has not previously conveyed subsistence campsites significantly over one acre in size.

The hearing testimony does not provide much information regarding a larger subsistence campsite use area.   The KIC land manager indicated the one-acre site includes the traditional structures and cleared area previously used as the Lies' campsite.  The Johnson's cabin parcel was not included in the site but testimony indicates that the vast majority of the use of the Johnson's cabin was by the Johnson family during the sixties and early seventies.  The Lies indicated that a landing area had been cleared at the point of island in the early sixties.  However, this landing area was not continuously maintained, was used by others with and without permission, and could not be considered an exclusive landing strip. The testimony also indicates that use of a boat, snowmachine, and float plane which could taxi right up to the subsistence campsite were the more popular forms of transportation to the site.  Other Lie family uses of the island are general hunting and berrypicking type activities which do not justify conveyance of subsistence campsite acreage.  Consequently, in addition to the credible KIC

Exhibit  1
Page  8  of 17
ORTIER & MIKKO

14(c) policy size limitations, there does not appear to be a use area justification for a larger subsistence campsite parcel.

## Findings of Fact and Conclusions:

The following findings of fact and conclusions are based upon the information available to the hearing officer and the hearing officer's assessment of this information.

1.     The 1959 quitclaim deed for Chairtree Island did not convey ownership of the island to Harold Lie.  Any homestead application rights to the island conveyed by the deed were extinguished in 1962 when BLM closed the homestead application file due to a lack of action on prove up requirements.  Accordingly, the Lies do not own Chairtree Island.

2.     KIC owns Chairtree Island by way IC 544.

3.     The Lie family believed until, at least, the mid-eighties that the quitclaim deed conveyed valid ownership title to the island and pursued their affairs believing they owned the island.

4.     Under the KIC 14(c) policies, the Lies belief that they owned the island is not a sufficient basis for granting a 14(c)(1) conveyance.  It is, however, a relevant consideration.

5.     The Lies adequately used the island as a subsistence campsite during the sixties and early seventies to meet the intent of the 1971 subsistence campsite use requirement and to justify a 14(c)(1) subsistence campsite conveyance.  This conclusion is based upon the the Lies' 14(c) application, the Charlie Sour, Sr.'s affidavit, testimony at the hearings, statements by the KIC Land Manager and submissions to the hearing records.

6.     The Johnson family claims that the Lies did not use the subsistence campsite after the early sixties is based on their observations during visits to the site.  Since they did not use the site on a full time basis, their observations do not provide adequate information to negate the use testimony considered in number five above nor to conclude that the Lies did not use the site.

7.     The Lies did not abandon the campsite even though they used the area much less after the early seventies.

8.     The KIC policy setting forth a one-acre maximum size limitation on 14(c)(1) subsistence campsites is consistence with the intent of the 14(c)(1) subsistence campsite provision and other Native corporation 14(c) policies.

- 9 -

Exhibit ___1___
Page ___9___ of _17_
PORTIER & MIKKO

9.   Under ANCSA Section 14(c)(1) authority, the structures on and the use of the Lies' 14(c)(1) subsistence campsite do not justify conveyance of a larger parcel.

<u>Hearing Officer Recommendations</u>:

Based upon the above analysis, findings, and conclusions, it is recommended that the KIC Board of Directors:

1.   Uphold the original 14(c)(1) decision on the Lie subsistence campsite claim regarding the conveyance of one acre on Chairtree Island as originally defined by the KIC land manager; and

2.   Disapprove the Lie appeal requesting the conveyance of Chairtree Island in its entirety or the conveyance of additional acreage on Chairtree Island using the ANCSA section 14(c)(1) subsistence campsite authority.

In view of the Lies long-term belief that they owned Chairtree Island, the KIC Board of Directors may wish to take some action which assures the Lie family nonexclusive subsistence and personal recreation use rights to the rest of the island, except for lands included in any 14(c)(1) conveyance to the Johnson family.

DATED this 9th day of March, 1994.


David G. Hanson
Hearing Officer
Arktos Associates
1600 A Street, Suite 309
Anchorage, Alaska   99501
(907) 276-8827


- 10 -

Exhibit   1
Page  10   of  11
PORTIER & MIKKO

### Johnson Appeal

**Introduction:**

Mabel Johnson submitted a 14(c)(1) application for a subsistence
campsite on Chairtree Island on February 3, 1992.  On August 26,
1993, Mr. Willie Goodwin, Jr. sent Mabel Johnson a letter informing
her that the 14(c) committee had approved her 14(c)(1) subsistence
campsite application and the conveyance of an 80 foot by 100 foot
subsistence campsite parcel.  Karen P. Gallahorn submitted a letter
to Willie Goodwin on behalf of Mabel Johnson on October 11, 1993
which appealed the decision of the 14(c) committee.

Two appeal hearings were held to examine the Johnson appeal.  The
first hearing was held in Kotzebue at the Alaska Technical Center
Library at 1:30 p.m. on February 7, 1994.  Ms. Karen Gallahorn
represented the Johnson family.  Mr. Willie Goodwin and Mr. Ed
Busch represented KIC.   The second appeal hearing was held in
Anchorage at the Arktos Associates offices at 1600 A Street, Suite
309, on February 9, 1994.  Ms. Mabel Johnson, Ms. Debbie Higgins,
and Mr. Mark Higgins represented the Johnson family and Mr. Willie
Goodwin and Mr. Ed Busch represented KIC.

**14(c)(1) Status:**

Based on the Johnson family use of the land as a subsistence
campsite, KIC approved the Johnson's subsistence campsite
application and granted an 80 foot by 100 foot subsistence campsite
around a cabin Dave Johnson built in 1964 and/or 1965.

**Basis of Appeal:**

Mabel Johnson appealed the KIC decision on the parcel size of the
approved subsistence campsite parcel.  The Johnson family believes
that out of fairness, their subsistence campsite parcel should be
enlarged from 80 feet by 100 feet (approximately one-fifth acre) to
a full acre.  Ms. Johnson also appealed the decision to protect her
parcel from the Lie appeal which was asking for all of Chairtree
Island.   During   the   Anchorage   hearing,   Johnson   family
representatives also indicated their interest in acquiring part of
the cleared area included in the Lie parcel as an addition to their
parcel.  As part of their appeal, the Johnson family questioned
whether the Lie family had adequately used the cleared area as a
subsistence campsite to justify approval of their parcel.  During
the hearings, Johnson family representatives provided additional
information regarding their use of the island and indicated they
had not seen the Lie family use the adjacent parcel.

Exhibit ____
Page __11__ of __11__
PORTIER & MIKKO

Appeal Considerations:

. Permission to Use Campsite

The Lie appeal letters and hearing testimony indicated that Dave Johnson asked Harold Lie's permission to build his cabin and use the campsite on Chairtree Island. During the Anchorage Lie hearing, Nina Lie indicated Harold Lie gave Dave Johnson permission as long as Harold Lie could use the cabin when Dave was not there. Testimony during the Johnson appeal hearings by Johnson family representatives confirmed that Dave Johnson asked permission to build the cabin and use the site. No one disputed that Dave Johnson asked permission to use the island based upon the impression that Harold Lie owned the island.

2. Johnson Family Use of Chairtree Island

The KIC 14(c) policies provide criteria regarding use of a subsistence campsite parcel during 1971. These criteria are as follows.

The applicant shall demonstrate that as of December 18, 1971:

(1) the applicant, or the party through whose use the claim arises, physically occupied a parcel on a regular seasonal basis as a campsite and base for engaging in subsistence activities for a substantial period of time during 1971;

(2) there were improvements located on the parcel related to subsistence activities such as trap line cabins, caches, fish racks, tent frames, etc.;

(3) if no improvements existed, the applicant shall submit sworn statements from at least two non-related persons substantiating the use of the parcel by the applicant;

(4) that the parcel was used as a subsistence campsite exclusively by the applicant or the applicant's immediate family;

(5) the applicant traditionally engaged in subsistence activities and was dependent on these activities for a substantial portion of his livelihood.

During 1964 and/or 1965, Dave Johnson built a cabin on Chairtree Island. The 14(c) application, appeal submissions, and hearing testimony indicates Dave Johnson's family used the cabin site for subsistence activities during the sixties and into the seventies. A letter from Ms. Mabel Johnson to Mr. Willie Goodwin, Jr. dated February 29, 1992, confirms subsistence campsite use of the land from 1961 through 1977 when the family left Kotzebue. The use of the cabin by the Johnson family during this period was not disputed

Exhibit 1
Page 12 of 12
PORTIER & MIKKO

by the Lie family but it was indicated that Dave Johnson used the
land with Harold Lie's permission.   Dave Johnson's use of the
sland dropped substantially after he left Kotzebue in 1977.

The Johnson family provided additional information regarding their
use of the land during the hearing and as submissions to the
hearing record.   These included discussion of site use, two letters
submitted to the hearing record, 1976 and later pictures of site
use, stories written at the site in the mid to late seventies, and
some slides of friends on or near the site in 1971.   Other slides
of activities on or near the site during the sixties were also
reviewed at the Anchorage hearing.   During the Anchorage hearing
and in a February 14th letter, Mabel Johnson indicated that her
family used the cleared area included in the Lie parcel and that
Dave Johnson constructed a new tower on the cleared area during the
sixties.

3.    Abandonment Possibility

The September 27, 1993 Lie appeal letter indicates the Johnsons no
longer use the island.   The fact that Dave Johnson and his family
left Kotzebue and moved out of the region in 1977 raises the
possibility of volunteer abandonment of the cabinsite.   However,
the fact that Dave Johnson returned to the site in 1978 and a few
times between 1978 and his death in 1989 indicate continued
interest in the site.   This impression is reinforced by Karen
Gallahorn's request for permission from Dave Johnson to add on to
he cabin in 1985.   The fact that this permission was granted in a
July 10, 1985 letter by Dave Johnson indicates that it was not his
intention to abandon the cabin site.   Since that time, it appears
that Karen Gallahorn acted as his representative as she continued
to use the cabin.

4.    Size and Location of Parcel

The KIC 14(c) policies specify direction and criteria for
determination of the size of subsistence campsite parcels.   This
policy direction is set forth below.

      The size of the parcel shall not exceed the amount of land
      actually used and necessary for a campsite or temporary
      dwelling while engaged in subsistence activities.   The maximum
      size of a parcel shall be no larger than one acre in
      size. . . .

      In determining parcels and sizes of parcels to be conveyed as
      subsistence campsites the following shall be considered:

      (1)  Only land used as a campsite or a base from which
      subsistence activities were conducted shall be conveyed.
      Lands actually used for such activities as hunting, trapping,
      berrypicking, timber or wood harvesting shall not be conveyed;

- 13 -

Exhibit   1
Page  13  of 17
PORTIER & MIKKO

(2)  Lands must have been used exclusively by an applicant or
the applicant's immediate family.   Lands used by several
families or by many community members will not be conveyed to
an individual or individuals;

(3)  Subsistence campsites parcels shall not be conveyed for
non-subsistence hunting and fishing activities;

(4)  Parcels shall not be conveyed for hiking, dogsledding,
snowmachining or other off-road vehicle routes or use areas.

The criteria regarding the size of the subsistence campsite place
emphasis on only conveying the land used as a campsite or a base
from which subsistence activities were conducted.  Lands used for
actual subsistence activities such as hunting, trapping,
berrypicking, etc., are not to be conveyed.  KIC was apparently
taking this policy into consideration when it determined that the
parcel size would be 80 feet by a 100 feet including the immediate
curtilage around the cabin built by Dave Johnson.  This is
consistence with the policies of other Native corporations and
court decisions such as the Hakala, et al. v. Atxam Corporation
decision.

The Johnson family testimony and submissions to the record,
however, provide information which may indicate that the family
used part of the cleared area as an extension of their subsistence
campsite.  The information that Dave Johnson built a new lookout
tower in the clearing and that at times a Johnson family tent was
rected in the clearing indicates subsistence campsite use.  During
the appeal hearings and in their final appeal submission, the
Johnson family requested that a portion of the clearing be added on
to their site based upon the construction of a new lookout tower
and use of the area.

It is logical to assume that on occasion the Johnsons used the
cleared area immediately adjacent to their cabin site.  It is also
clear that use of this area would be in conflict with the parcel
defined for conveyance to the Lie family.

5.   Conflicting Parcel Claims.

KIC's 14(c) policies set forth decision criteria for dealing with
conflicting parcel claims on page 13.  These criteria are set forth
below.

(3)  Conflicting claims

Where there are conflicting claims for the same tract of land,
the following factors will be considered in determining the
validity and priority of the applications.

- 14 -

Exhibit ___1___
Page __14__ of __17__
PORTIER & MIKKO

(a)  the party who first commenced the use of the tract and was utilizing it through December 18, 1971;

(b)  the manner in which the tract was utilized and the frequency of the utilization;

(c)  the extent to which the tract was utilized after December 18, 1971 and whether there was a voluntary abandonment of the use or a claim to title arising from such use;

(d)  whether permission was sought from one of the claimants for the use of the tract;

The use of a tract by an individual with the permission of the applicant during the same general time period shall not result in the denial of the claim of an applicant.

The criteria set forth several factors to be considered in determining the priority of applications for conflicting use areas. Both the Lie and Johnson claims satisfy certain of these factors. Both claimants claimed to have utilized the cleared area or parts of the cleared area through December 18, 1971 and both claimants were utilizing it for a subsistence campsite. Neither claimant has voluntarily abandoned their specific parcel or the overlap area. The Johnson family might argue that they have utilized the parcel more frequently than the Lie family, especially since the early seventies. However, the appeal process did not specifically focus on frequency of use in 1971 or place emphasis on rigorous documentation of specific use instances. The Lie family did commence use of the tract first.

A key consideration is whether one claimant requested permission from the other claimant to use the area. In this case, Dave Johnson asked permission from Harold Lie to use the land and build a cabin on the land. This permission request indicates a recognition that Harold Lie had an ownership right or use right for the land and also is an important factor in establishing conveyance priority for the cleared area. The importance of the permission factor is emphasized by the last line of the conflicting claims criteria which states that the use of a tract by an individual with the permission of the applicant during the same general time period shall not result in the denial of the claim of an applicant. Consequently, though the Johnsons may have used the parcel more often, the fact that the Lies commenced use on the parcel, and that the Johnsons asked permission from the Lies to use the parcel, argues that the Lies' claim on the cleared area should take precedence over the Johnson's claim to a portion of the cleared area. The Lie's priority rights for the cleared area would be limited to the one acre area of their previously defined subsistence campsite due to the KIC 14(c) Policy one acre site size limitation. Consequently, site priority rights based upon the

- 15 -

Exhibit____I____
Page _15_ of _11_
PORTIER & MIKKO

permission request would not impact the Johnson cabin parcel located outside the Lie one acre parcel.

## Findings of Fact and Conclusions.

1.    Dave Johnson requested and received permission from Harold Lie to use the island for a subsistence campsite and to build a cabin on the island.

2.    The Johnson family did use the parcel of land surrounding the cabin for the purposes of building a cabin and to occupy this cabin as a subsistence campsite.  The Johnsons adequately used the cabin site as a subsistence campsite during the sixties and seventies to meet the intent of the 1971 subsistence campsite use requirement and to justify a 14(c)(1) subsistence campsite conveyance.

3.    The Johnson family did not voluntarily abandon the cabin site after Mr. and Mrs. Johnson left Kotzebue in 1977.  This is born out by Mr. Johnson's return to the cabin site in 1978 and on a few occasions the following decade, Karen Gallahorn's recognition that she needed to get permission from Dave Johnson to build onto the cabin, and Dave Johnson's letter of permission to Karen Gallahorn.

4.    It is logical to assume that the Johnson family used portions of the cleared area adjacent to their parcel.  Though it has not been verified by the other parties to this appeal, it is recognized that the Johnsons claim to have built the lookout tower in the cleared area.

5.    Any claim the Johnsons have to the cleared area included within the one acre Lie 14(c)(1) parcel boundaries, is in conflict with the Lie 14(c)(1) claim.

6.    Using the factors set forth in the decision criteria of the KIC 14(c) policies, priority for conveyance of the cleared area within the one-acre parcel previously delineated as the Lie's subsistence campsite must be with the Lie family and should not be infringed upon by the Johnson claim.

7.    Since it appears that the Johnsons built a lookout tower structure outside of their one-fifth acre cabin parcel on part of the cleared area which is not available for conveyance to them, it may be appropriate to add additional land to the Johnson cabin site parcel which does not conflict with the Lies' subsistence campsite parcel.

8.    The Johnson family provided information on portions of the clearing that they used in their final written submission to the hearing record.  The hearing officer is not adequately familiar with the parcels to determine how much land was involved in the additional area described by the Johnsons.  If a decision is made

Exhibit____I____
Page__16__of__17__
FORTIER & MIKKO

to add additional land to the Johnson cabin site parcel, the size
of the additional area described in the written submission may be
good indicator of the amount of land which should be added to
their cabin parcel outside of the Lie's one-acre subsistence
campsite.

Hearing Officer Recommendations.

Based upon the above analysis and findings, it is recommended that
the KIC Board of Directors:

1.    Uphold the original 14(c)(1) decision on the Lie 14(c)(1)
claim regarding the conveyance of one acre of land on Chairtree
Island as originally defined by the KIC land manager;

2.    Approve the Johnson appeal regarding the addition of
additional land to the previously designated 80 foot by 100 foot
cabin site such that the final parcel does not exceed one acre and
does not conflict with the previously designated Lie parcel; and

3.    Determine the amount of land to be added to the Johnson parcel
by considering the land use area defined in the February 14, 1994
letter to the hearing officer from Mabel Johnson.

It should be recognized that the recommendation regarding the
addition of land to the 80 foot by 100 foot Johnson cabin site
parcel is not specifically mandated by KIC 14(c) policies and falls
into a gray area of interpretation and fairness.

DATED this 9th day of March, 1994.


David G. Hanson
Hearing Officer
Arktos Associates
1600 A Street, Suite 309
Anchorage, Alaska   99501
(907) 276-8827


- 17 -

Exhibit ___
Page ___ of ___
PORTIER & MIKKO

**KIKIKTAGRUK INUPIAT CORPORATION**    373A Second Avenue • P.O. Box 1050 • Kotzebue, Alaska 99
(907) 442-3165 • Fax (907) 442-2165

## MINUTES OF REGULAR MEETING HELD MARCH 13, 1995

**"WHAT I FEEL LIKE SAYING"** - Off record

**CALL TO ORDER**

Chairperson Margaret Hansen called the meeting to order at
7:09 p.m.

**ROLL CALL**      Present were:    Margaret Hansen, Chairperson
                                    Charlie Gregg, Vice Chair
                                    Che... Edenshaw, Secretary
                                    Caroly...  ... Treasurer (via
                                    telephone.
                                    Albert Henry (v       ...one)
                                    Dood Lincoln
                                    Augie Nelson Sr.
                                    Mary Viveiros
                     Absent was: Chuck Schaeffer
                         Staff: Bish Gallahorn, President; Willie
                         Goodwin Jr., Land Manager; Harold
                         Jessup, Controller; Alice Schaeffer

**INVOCATION** - Given by Augie Nelson Sr.

**INTRODUCTION OF GUESTS**

**ADOPTION OF AGENDA**

Added under Old Business, e. 14(c)          , added
Business, d. Admin. Policies

        LINCOLN - EDENSHAW - That the agenda be approved as
                            amended.   APPROVED UNANIMOUSLY.

**ADOPTION OF MINUTES**

Regular Meeting February 13, 1995

        LINCOLN - GREGG - That the regular minutes of February
                          13, 1995 be adopted.   APPROVED
                          UNANIMOUSLY.

Special Meeting February 28, 1995

Correction:  Carolyn Smith excused.

Exhibit _2_
Page _1_ of _6_
PORTER & MIKKO

KIC REGULAR MEETING MARCH 13, 1995

EDENSHAW - NELSON - That the special meeting minutes of February 28, 1995 be adopted as amended. APPROVED UNANIMOUSLY.

## VISION PLAN UPDATE

Skills for All Anticipated Jobs Determined: 100% done. The job Descriptions binder was reviewed. Smith asked if something can be written that employees stay if KIC pays for the training? The Chair replied its mentioned in S.O.P. 413. Edenshaw suggested to add reimbursement to an S.O.P.

Plan for Overcoming Skill Deficiencies Determined: 100% done

Process To Review Company Policies Established: 100% done. Smith asked to put dollar amounts in S.O.P. 426. The president replied it states these benefits may change at any time. She suggested to move the "Qualifying Events & Periods of Coverage" in front.

Evaluation of Dock Site Improvements/Facilities and Water Transport: 100% done

Communications, 3rd Quarter 12/31/94

Communication System to Get Employee Suggestions and Plan to Use Them in Place: 100% done

System, 1st Quarter 6/30/94

Current and Future Communications and Data Processing Needs Assessed: 100% done

2nd Quarter 9/30/94

CQI Investigated: The president will give a report at the Seattle board retreat.

Procurement Made of New Communications and Data Processing Equipment and Capabilities Needed For Current and Future Operations: 100% done

Computer Programs For Cost Accounting, Estimating, Prev. Maint. and Inventory (For Const./Maint.) Defined and Established: 100% done

## CORRESPONDENCE

Letter to Randy Swensen, Letter of Support for ATC - Informational

Exhibit 2
Page 2 of 6
PORTIER & MIKKO

## OLD BUSINESS

<u>Hospital Housing Project Update</u> - The housing project has slowed until spring.

<u>UICC Manpower Reports</u> - The president mentioned this information is sent monthly to the IRA's within the region.

<u>A/R Update</u> - Informational

<u>Chair Tree Island Appeal Decision</u>

VIVEIROS - HENRY - I move that the findings and recommendations submitted to the Board of Directors by the Hearing Officer concerning the appeals filed by the below named individuals be accepted and that Kikiktagruk Inupiat Corporation (KIC) approve the 14(c) substistence campsite claims of these individuals as follows:

1. Nina and Sharon Lie: The application for a subsistence campsite located on Chairtree Island be approved for a subsistence campsite of an area of one (1.0) acre in the location as identified in the recommendation of KIC staff to the Board of Directors and the report of the Hearing Officer.

2. Mabel Johnson: The application for a subsistence campsite located on Chairtree Island be approved for a subsistence campsite of an area of 80 feet by 100 feet in the location as identified in the recommendation of KIC staff to the Board of Directors and the report of the Hearing Officer.

The areas approved for reconveyance by Kikiktagruk Inupiat Corporation are separate areas and include the improvements, if any, as included in the recommendations of KIC staff and the report of the Hearing Officer submitted to the KIC Board of Directors. Title to these individual subsistence campsites will be by quitclaim deed issued by KIC to the applicants within 60 days

Exhibit __2__
Page _3_ of _6_
PORTIER & MIKKO

following recordation in the
appropriate office of the State of
Alaska District Recorder of the plat
of survey performed by the United
States Bureau of Land Management.
Title issued by KIC is for the
surface estate only.

KIC reserves the right of first
refusal in the event that either of
the applicants or their rightful
heirs wish to sell or transfer by
any means any rights they possess to
either of the subsistence campsites
that are the subject of this motion.

Roll call vote - 5 yes; 2 no (Gregg and Lincoln); 1
absent (Schaeffer); 1 abstain (Edenshaw; did not
participate in 14(c) committee mee ngs). MOTION
CARRIES.

Off record at 8:05 p.m. Back on record at 8:07 p. Break
at 8:08 p.m. Back on record at 8:19 p.m.

14(c) Update - The board reviewed the City of Kotzebu s
counter proposal.

> LINCOLN - VIVEIROS - That there be a 14(c)(3) meeting
> March 14, 1995 at 12 noon.
> APPROVED UNANIMOUSLY.

**NEW BUSINESS**

Resolution 95-07, Support for Chukchi College

> VIVEIROS - EDENSHAW - To approve Resolut   95 ""
> support for Chukchi College.
> APPROVED UNANIMOUSLY.

Adoption of FY 96 Operating Budget

> LINCOLN - EDENSHAW - To refer to a committee on
> Wednesday, March 15, 1995.
> APPROVED UNANIMOUSLY.

400 Series S.O.P.'s - The item was referred to the Policy
Committee.

Admin. Policies

> EDENSHAW - LINCOLN - To approve the Admin. Policies as
> revised. APPROVED UNANIMOUSLY.

**PRESIDENT'S REPORT**

Exhibit 2
Page 4 of 6
PORTIER & MIKKO

<u>Staff Travel</u> - Mike O'Connor, Seattle, re: 638 seminar; Steve Turton, San Francisco, re: Great Plains training; Bish, Anchorage, re: meeting with UIC and IHS on the hospital demolition.

<u>Financial Review</u> - Reviewed on Friday, March 10th.

<u>President and Chair's Contingency Fund Reports</u> - The Chair asked where does "Other Entertainment" come out of; the president replied out of the contingency fund.

The president mentioned that Kotzebue Electric Association is willing to meet with the board any time to discuss the windmill project.   (For the April agenda, "Other" will be added under "President's Report").

<u>Employment Statistics (Jan. 31, 1995)</u> - The president reported that KIC and NANA shareholder hire is 81% and other is 19%.

Annual Leave: The president mentioned that the payroll clerk was not here for several days.   It will be brought to a committee upon her return.

**BOARD COMMENTS**

Lincoln suggested to contact OTZ Telephone on the in-coming long distance calls.   She suggested to write a letter to the high school basketball team coach recognizing Guy Adams for the good regional program he did last year.   She asked if KIC has a job project at the NANA museum?   The president replied yes, a demolition project.   She asked how is this going?   The president replied its going well, and KIC has two construction people there.   She commented she is looking forward to the board retreat.

Viveiros mentioned she was on the telephone to Seattle this afternoon and her party commented there is a long distance telephone problem.   She commented she is looking forward to next week's board retreat.

Gregg recommended that something be done about the NANA board size.   Off record at 8:44 p.m.   Back on record at 8:55 p.m.

Edenshaw commented that she is looking forward to the board retreat.

Smith asked if everyone took the drug test?   The reply was no.   She asked for approval for the $500 emergency donation for a past employee.

Exhibit 2
Page 5 of 6
FORTIER & MIKKO

SMITH - LINCOLN - To approve a $500 emergency donation for a past employee going to Seattle for his daughter's medical.

Roll call vote - 8 yes; 1 absent.  MOTION CARRIES.

**SHAREHOLDER COMMENTS** - None

**EXECUTIVE SESSION** - None

**TIME/PLACE OF NEXT MEETING**

Regular meeting April 10, 1995 at 7 p.m.

**MEETING EVALUATION**

Gregg, Edenshaw, Henry, Lincoln, and Viveiros commented tonight was a good meeting. Lincoln thanked Henry and Smith for calling back. S..th commented she felt good about tonights meeting.

**ADJOURN**

The meeting was adjourned at ⸱   ⸱.m.

| 4-7-95 | |
|---|---|
| Date Approved | Recording Secretary |

Exhibit 2
Page 6 of 6
PORTIER & MIKKO

**KIKIKTAGRUK INUPIAT CORPORATION**    373A Second Avenue • P.O. Box 1050 • Kotzebue, Alaska 9975
(907) 442-3165 • Fax (907) 442-2165

March 14, 1995

CERTIFIED MAIL

Mabel Johnson
4112 Irene Drive
Anchorage, Alaska  99504

Dear Mabel:

The Board of Directors of Kikiktagruk Inupiat Corporation (KIC) met to take final action on the recommendations of the Hearing Officer concerning the appeal filed by you on the initial decision of the KIC 14 (c) Committee regarding your application for a subsistence campsite on Chairtree Island under Section 14 (c) (1) of the Alaska Native Claims Settlement Act (ANCSA).

After deliberating long and hard, the Board voted to accept the recommendations of the Hearing Officer as contained in his report to KIC. KIC hereby approves your application for a parcel of land 80 feet by 100 feet in area on Chairtree Island, as described in your application  and in the staff recommendation to the Board. KIC will include this parcel in the 14 (c) map of boundaries it prepares and submits to the Bureau of Land Management. Following review and approval of the map of boundaries, BLM will survey the parcel at no cost to you. We anticipate this will be within 1-2 years after the map of boundaries has been approved by BLM. Once the final plat of survey has been prepared and signed by KIC and filed with the State Recorder, KIC will issue you the final deed. This will likely be within 2 years of the date of survey.

Thank you for your cooperation throughout this process.

Sincerely,

*Margaret Hansen*

Margaret Hansen
Chairperson

MH/as

Exhibit    3
Page___1__of_1_
PORTIER & MIKKO

1 907 442 2165     K.I.C.        K.I.C. KOTZEBUE       13:16:15   10-20-2005    17/21



**Kikiktagruk Inupiat Corporation**

December 20, 2002

Karan Gallahorn
PO Box 83
Kotzebue, Alaska 99752

Dear Karan,

At the November 25, 2002 all committee meeting of the KIC Board of Directors the 14(c) selections for the subsistence campsites by the Lies and Johnsosns were on the agenda. The committee decided that this issue was already taken care of in the March 13, 1995 KIC Board of Directors regular meeting. By board action, they approved the subsistence campsite application for one acre for Sharon and Nina Lie and a subsistence campsite application for 80'x100' for Mabel Johnson at the meeting. The agreed upon property line is half way between Lie's cache and Johnson's cabin beginning at the boat landing.

Enclosed please find a diagram and a picture of the structures indicating where the property line will be after the area is surveyed.

Our surveyor is scheduled to survey this area after freeze up this winter. Since we are experiencing a warm unusual winter, the survey will probably take place next month. After that, a map of boundaries will be drafted. Before the map of boundaries can be forwarded to Bureau of Land Management, KIC will need to complete a sign off to prove to BLM that claimants are satisfied with the claims as adjudicated, stake and mapped. If the claimant does not agree with where the stakes are placed, it will delay the transfer by Quit Claim Deed.

Please understand that KIC Board of Directors made the decision for Chairtree island according to the recommendations of the hearings officer.

Please let me know if you have any questions.
Best Wishes for the coming Holidays!

Sincerely,

*Ernest Norton*
Ernest Norton, Land Manager

cc: Mabel Johnson
     Kris Lethin, President/CEO, KIC
enclosures

Exhibit 4
Page 1 of 5
PORTIER & MIKKO





Lie's & Johnson's 14 ( c )( 1 ) Site Inspection

Exhibit 4
Page 2 of 5
PORTIER & MIKKO

## Lie's & Johnson's 14 ( c )( 1 ) Site Inspection



The cabin pictured above is the Johnson's 14 ( c )( 1 ) Subsistence campsite selection. The Board approved a Site 80' x 100' feet March 13, 1995 KIC Regular Meeting

The picture above represents the Lie's 14 ( c )( 1 ) application for lands approved by the board of directors. The dimensions approved was a one square acre. Other documented use of the area includes drums, old dump-site, a ladder and other proof of evidence.

The large cabin represented in the picture to the left is owned by Karen Gallahorn and appears to be trespass-ing on the Lie's approved subsistence application.

*Picture take 09-23-02 by Grant Hildreth, Land Mgr. Shane Hildreth assisted in the site inspection.*

Exhibit 4-a
Page 5 of 5
PORTIER & MIKKO

*Johnson's & Lie's 14(c)(1)*

The following diagram was drawn from my site inspection and digital photos taken on 09-23-02. I was assisted by Shane Hildreth who accompanied me to the sites in question. Grant Hildreth, Land Manager (09-24-02 site drawing).

- Lie's Cabin N 67°08' 24.5" W 162°55' 6.5"
- Johnson's Cabin N 67°08' 24.3" W 162°55' 13.5"
- Calhoun's Cabin Trespassing N 67°08' 25.3" W 162°55' 16.5"

Water Slough

Low Marsh Area

Ladder

Drum's Dump

Exhibit  4
Page  4  of  5
PORTIER & MIKKO



The TopoZone is produced by Maps a la carte, Inc. - © 2000 Maps a la carte, Inc. - All rights reserved. Use of this site is governed
and Terms of Use. We care about your privacy - please consult our Privacy Statement for details.

Exhibit  4
Page  5  of 5
PORTIER & MIKKO

http://www.topozone.com/map.asp?lat=67.1511697631571&lon=-162.5875047143969&s...    9/24/2002

# KIKIKTAGRUK INUPIAT CORPORATION

P.O. Box 1050
Kotzebue, Alaska 99752
Phone: (907) 442-3165
Fax: (907) 442-2165

## SETTLEMENT OF 14(c)(1) RECONVEYANCE OBLIGATION

We, Nina A. Lie and Sharron J. Lie, hereby certify that the parcel identified for reconveyance by the Kikiktagruk Inupiat Corporation and located on the Noatak River, near the community of Kotzebue and shown as Lot #21, within Section 10, Township 20 North, Range 18 West, Kateel River Meridian on the Kikiktagruk Inupiat Corporation's ANCSA 14(c) Kotzebue Partial Map of Boundaries, containing approximately 1.03 acres satisfies any claims of entitlement we have under Section 14(c)(1) of the Alaska Native Claims Settlement Act.

Signed: _____
　　　　　Nina A. Lie

_____
Sharron J. Lie

Date: _November 24, 2004_

STATE OF ALASKA　　　　　)
　　　　　　　　　　　　　　　) ss.
SECOND JUDICIAL DISTRICT　)

THIS IS TO CERTIFY that on the _24th_ day of _November_, 2004, before me, the undersigned Notary Public, personally appeared Sharron J. Lie, to me known and known to me to be the person named in the foregoing Settlement Form, and she acknowledged to me that she has in her official capacity signed the Settlement Form as the free act and deed of her will.

WITNESS my hand and notarial seal on the day and year in this certificate first above written.

_____
Notary Public in and for Alaska
My Commission expires: _2/19/07_

Exhibit ___5___
Page ___1___ of ___1___
PORTIER & MIKKO



GOVERNMENT LOT 3

SCALE

LOT 22

CABIN

108'

S63°W

80'

N27°W

109'

S63°W

100'

30.5'±

CACHE

56.5'±

LOT 21

209'

N27°W

NORTH

252'

N63°E

SURVEY DETAIL

SCALE 1"=60'

WATER SLOUGH

WATER SLOUGH

GOVERNMENT LOT 2

SECTION 15

Exhibit ___6___
Page ___1___ of ___1___
FORTIER & MIKKO