DONALD CRAIG MITCHELL
Alaska Bar No. 7605046
1335 F Street
Anchorage, Alaska 99501
(907) 276-1681
(907) 276-1681 (Fax)
dcraigm@aol.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

MABEL JOHNSON, by Deborah Higgins, )
her Next Friend and Daughter, and  )
KARAN GALLAHORN,                   )
                                   )
            Plaintiffs,            )
                                   )   No. A05-110 CV (TMB)
vs.                                )
                                   )
KIKIKTAGRUK INUPIAT CORPORATION,   )
                                   )
            Defendant.             )
_____)

REPLY TO OPPOSITION OF DEFENDANT KIKIKTAGRUK INUPIAT
CORPORATION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The First Claim for Relief in the First Amended Complaint alleges a claim against defendant Kikiktagruk Inupiat Corporation (KIC) based on the equitable doctrine of promissory estoppel.

On November 29, 2005 the plaintiffs filed a motion which requests the court to enter a summary judgment against KIC on the First Claim for Relief because there is no genuine issue between the plaintiffs and KIC regarding any material fact and the plaintiffs are entitled to a judgment in their favor as a matter of law.

In support of their motion, the plaintiffs filed affidavits from plaintiff Karan Gallahorn, Bish Gallahorn, the former president of KIC, and Vernon Richards, who in 1997 assisted plaintiff Gallahorn to site, and then construct, a cabin on the 80 x 100 foot parcel of land on Chairtree Island whose title plaintiff Mabel Johnson will, at some future date, be conveyed by KIC pursuant to section 14(c)(1) of the Alaska Native Claims Settlement Act (ANCSA). See Clerk's Docket No. 16.

On February 13, 2006 KIC filed a memorandum in which it opposed the plaintiffs' motion for summary judgment. See Clerk's Docket No. 37. KIC also filed affidavits from Willie Goodwin, who was KIC's land manager in 1997, and Ernie Norton, KIC's present land manager. See Clerk's Docket Nos. 38 and 39.

Contrary to KIC's assertion in its opposition memorandum that "[t]he affidavits of Mr. Goodwin and Mr. Norton . . . make short work of any claim to Summary Judgment", a careful reading

of both affidavits indicates that neither presents facts which demonstrate that there is a genuine issue between the plaintiffs and KIC regarding any material fact.

   A. <u>Ernie Norton Affidavit</u>

In her affidavit, plaintiff Gallahorn states that, at the direction of Willie Goodwin, in 1997 she and Vernon Richards staked out the boundaries of an 80 x 100 foot parcel of land on Chairtree Island that included the old Johnson cabin within their purview, and that she and Mr. Richards then sited and constructed a new cabin at a location within those boundaries. <u>See</u> Affidavit of Karan Gallahorn, para. no. 10, at 6-7 (October 28, 2005). In his affidavit, Mr. Richards states that he has the same recollection. <u>See</u> Affidavit of Vernon Richards, para. no. 4, at 2-3 (August 5, 2005).

In his affidavit, Ernie Norton states that at some unidentified recent date he visited Chairtree Island and measured the locations of the old Johnson cabin and the cabin plaintiff Gallahorn and Mr. Richards constructed in 1997. After analyzing those measurements, Mr. Norton informs the court that "[t]he Gallahorn cabin could not be constructed within an 80 x 100 foot rectangle that included all of the previously built Johnson cabin <u>except by running the southerly line of her lot on the back wall</u>

<u>of the Johnson cabin or within two feet of it</u>." (emphasis added). <u>See</u> Affidavit of Ernie Norton, para. no 5, at 2 (February 13, 2006).

In other words, Mr. Norton states that the old Johnson cabin and the cabin plaintiff Gallahorn and Mr. Richards constructed in 1997 <u>both</u> are located within the boundaries of an 80 x 100 foot parcel, with a two-foot set back for the old Johnson cabin.

As a consequence, there is no factual conflict between Mr. Norton's affidavit and plaintiff Gallahorn's and Mr. Richards' affidavits.

    B. <u>Willie Goodwin Affidavit</u>

    1. <u>While Genuine, the Factual Dispute Between the Plaintiffs and KIC Regarding Whether Willie Goodwin Drew, and Then Gave to Plaintiff Gallahorn, a Map, Is Not a Dispute That Involves a Fact That Is Material to the Court's Adjudication of the First Claim for Relief</u>.

In her affidavit, plaintiff Gallahorn states that in 1997 when she met with Willie Goodwin and Bish Gallahorn, after directing her to stake out the boundaries of an 80 x 100 foot parcel of land on Chairtree Island that included the old Johnson cabin within their purview and then to site her new cabin at a location within those boundaries, Mr. Goodwin drew a map on a small piece of paper which he gave to plaintiff Gallahorn,

and which plaintiff Gallahorn and Vernon Richards subsequently used as a guide. <u>See</u> Affidavit of Karan Gallahorn, para. no. 9, at 5-6 (October 28, 2005).

In his affidavit, Mr. Goodwin states that during his 1997 meeting with plaintiff Gallahorn "I did not make a map for her." <u>See</u> Affidavit of Willie Goodwin, para. no. 4, at 2 (February 10, 2006).

Mr. Goodwin's statement creates a factual dispute regarding whether in 1997 during his meeting with plaintiff Gallahorn he drew a map. However, while genuine, that factual dispute does not involve a fact whose determination is "material" to the court's adjudication of the First Claim for Relief.

A "material fact is one which might affect the outcome of the case under governing law." <u>See</u> <u>Anheuser-Busch, Inc. v.</u> <u>Natural Beverage Distributors</u>, 69 F.3d 337, 343 (9th Cir. 1995). Applying that test, there are only two facts that are "material" to the court's adjudication of the First Claim for Relief:

> 1. In 1997 did Mr. Goodwin direct plaintiff Gallahorn to stake out the boundaries of an 80 x 100 foot parcel on Chairtree Island that included the old Johnson cabin within their purview and then to site her new cabin at a location within those boundaries?

5

2. If there is no genuine dispute that the answer to question no. 1 is yes, did plaintiff Gallahorn rely on Mr. Goodwin's directions when she sited her new cabin?[1]

If, as plaintiff Gallahorn asserts in her affidavit, Mr. Goodwin drew a map in order to illustrate how his directions should be implemented, the fact that he did so is relevant evidence that would support the conclusion that Mr. Goodwin communicated to plaintiff Gallahorn the directions that plaintiff Gallahorn has stated under oath that he did.

But if arguendo plaintiff Gallahorn is mistaken in her recollection that in 1997 during her meeting with him that Mr. Goodwin drew a map, the fact that Mr. Goodwin did not draw a map is not "material" insofar as the question of whether Mr. Goodwin gave plaintiff Gallahorn directions regarding how and where she should site her new cabin.

Because it is not, the factual dispute regarding whether Mr. Goodwin drew a map does not prevent the court from granting the plaintiffs' motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

---

[1] If there is no genuine dispute that the answer to question no. 2 also is yes, the court then must determine whether, as a matter of law rather than of fact, plaintiff Gallahorn's reliance on Mr. Goodwin's directions was reasonable.

202 (1986)("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment"). Accord <u>Walters v. Reno</u>, 145 F.3d 1032, 1041 (9th Cir. 1998)(holding that "summary judgment may be proper even in light of existing factual disputes, as long as none of the facts in dispute is material").

2. <u>No Assertion Made by Willie Goodwin in His Affidavit Creates a Factual Dispute Regarding the Statements Made by Plaintiff Karan Gallahorn and Bish Gallahorn in Their Affidavits Regarding the Directions Mr. Goodwin Gave to Plaintiff Gallahorn</u>.

The outcome of the instant motion for summary judgment turns on the question of whether KIC has presented evidence that creates a genuine issue of fact regarding the following statements of material fact contained in the affidavits of plaintiff Karan Gallahorn and Bish Gallahorn:

<u>Karen Gallahorn Affidavit</u>

In 1997 Mabel Johnson gave me permission to build a new cabin on the 80 x 100 foot parcel of land on Chairtree Island that the Kikiktagruk Inupiat Corporation had agreed several years earlier to convey to her as a section 14(c)(1) subsistence campsite. In order to be sure that I built the new cabin at a location that would be within the boundaries of the 80 x 100 foot parcel that the Kikiktagruk Inupiat Corporation eventually would convey to Mabel Johnson, I met with Bish Gallahorn, who at the time was the president of the corporation, and Willie Goodwin, who still was the corporation's land manager. The meeting was held in Bish Gallahorn's office. At the meeting I asked Bish

>    Gallahorn and Willie Goodwin to have the boundaries of Mabel
>    Johnson's section 14(c)(1) parcel on Chairtree Island
>    surveyed so that I could know for sure where I should build
>    the new cabin so that it would be located on Mabel Johnson's
>    parcel. In response, Bish Gallahorn told me that the BLM,
>    rather than the Kikiktagruk Inupiat Corporation, was
>    responsible for surveying the boundaries of section 14(c)(1)
>    subsistence campsites. I then asked Bish Gallahorn what I
>    then should do to ensure that I built my new cabin at a
>    location that would be inside the boundaries of Mabel
>    Johnson's parcel whenever the BLM finally surveyed the
>    boundaries. Bish Gallahorn responded by telling me to ask
>    Willie Goodwin, who was in the room and had been listening
>    to the conversation that I had been having with Bish
>    Gallahorn.  When I then asked Willie Goodwin, he instructed
>    me to stake out the boundaries of an 80 x 100 foot parcel on
>    Chairtree Island that located the Johnson cabin inside those
>    boundaries and to then build my new cabin at any location
>    within those boundaries.

See Affidavit of Karan Gallahorn, para. no. 9, at 4-5 (October 28, 2005).

   Bish Gallahorn Affidavit

>    I do not recall the month or the exact day it took place,
>    but I do recall the meeting in 1997 that Karan Gallahorn had
>    with Willie Goodwin and me that is described in paragraph
>    no. 22 of the complaint. The meeting took place in my office
>    in Kotzebue. At the meeting, after informing Mr. Goodwin and
>    me that Mabel Johnson had authorized her to build a new
>    cabin on Mrs. Johnson's section 14(c)(1) subsistence
>    campsite parcel on Chairtree Island, Ms. Gallahorn asked me
>    to have KIC survey the boundaries of the parcel so that she
>    could build the new cabin at a location that would be inside
>    the boundaries. I explained to Ms. Gallahorn that the BLM,
>    rather than KIC, was responsible for conducting the surveys
>    and that it likely would be quite a few years before the BLM
>    surveyors would begin work. In response, Ms. Gallahorn asked
>    me how - if that was the situation - she should proceed. I
>    told her to ask Mr. Goodwin, who was sitting in my office
>    and had been listening to Ms. Gallahorn's and my

>conversation. When Ms. Gallahorn then asked Mr. Goodwin, Mr. Goodwin told Ms. Gallahorn that when she next visited Chairtree Island she should stake the boundaries of an 80 x 100 foot parcel that included within those boundaries the cabin Mrs. Johnson's husband, Dave, had built in the 1960s. Mr. Goodwin then told Ms. Gallahorn to build her new cabin at any location within those boundaries.

See Affidavit of Bish Gallahorn, para. no. 5, at 3-4 (August 26, 2005).

To try and create a genuine issue regarding those material facts, KIC has submitted an affidavit from Willie Goodwin. In that affidavit, Mr. Goodwin first states that he remembers the meeting in 1997 that plaintiff Gallahorn and Mr. Gallahorn discuss in their affidavits, and that during that meeting plaintiff Gallahorn "ask[ed] about making improvements to the Johnson cabin." See Affidavit of Willie Goodwin, para. 4, at 2 (February 10, 2006).

Those statements are consistent with, and indeed support, the factual statements contained in the affidavits of plaintiff Gallahorn and Mr. Gallahorn.

Mr. Goodwin then states:

>I told her [i.e., plaintiff Gallahorn] she would have to get permission from the Johnson's (sic) to make those improvements and that I had no authority to give her permission.

> I had no authority to tell her [i.e., plaintiff Gallahorn] where she could build a cabin[2] and I am positive that I never gave her permission to build a cabin anywhere.

See id. para. nos. 4 and 5, at 2.

Those statements also do not conflict with any statement of material fact contained in the sections of the affidavits of plaintiff Gallahorn and Mr. Gallahorn set out above.

The reason they do not is that in those affidavits plaintiff Gallahorn and Mr. Gallahorn do not assert that plaintiff Gallahorn asked Mr. Goodwin for permission to construct a new cabin on the 80 x 100 foot parcel of land on Chairtree Island to which plaintiff Johnson had possessed equitable title since 1993 when KIC approved the application for a subsistence campsite that she had submitted in 1992 pursuant to section 14(c)(1) of ANCSA.

Rather, plaintiff Gallahorn states in her affidavit that plaintiff Johnson already had granted plaintiff Gallahorn permission to construct a new cabin, and that the purpose of plaintiff Gallahorn's meeting with Messrs. Gallahorn and Goodwin was simply to obtain from them, as agents of KIC, directions

---

[2]Whether in 1997 either as its land manager or at the direction of Mr. Gallahorn, the president of KIC, Mr. Goodwin had actual or apparent authority from KIC to tell plaintiff Gallahorn or any other person where he or she could or could not build a cabin is a question of law, rather than of fact.

regarding how she should proceed in order to ensure that she sited her new cabin on land whose title, at some unspecified day in the future, KIC would convey to plaintiff Johnson.

Since no statement of fact contained in Mr. Goodwin's affidavit conflicts with any statement of material fact contained in plaintiff Gallahorn's and Mr. Gallhorn's affidavits, KIC's opposition to the plaintiffs' motion for summary judgment is without merit.

## Conclusion

For the reasons set forth both in their motion and above, the plaintiffs respectfully request the court to grant their motion for summary judgment.

DATED: February 23, 2006

                                              s/ DONALD CRAIG MITCHELL

                                              1335 F Street
                                              Anchorage, Alaska 99501
                                              (907) 276-1681
                                              (907) 276-1681 (Fax)
                                              dcraigm@aol.com
                                              Alaska Bar No. 7605046

                                              Attorney for Plaintiffs

Certificate of Service

_____I certify that on February 23, 2006 a copy of Reply to Opposition of Defendant Kikiktagruk Inupiat Corporation to Motion for Summary Judgment on First Claim for Relief Alleged in First Amended Complaint and Request for Oral Argument on Motion for Summary Judgment on First Claim for Relief Alleged in First Amended Complaint were sent electronically to:

    John Havelock          Samuel Fortier
    Attorney for Defendant   Attorney for Sharron Lie
    jehavelock@yahoo.com     fortmikk@ak.net

                        s/ DONALD CRAIG MITCHELL

                        1335 F Street
                        Anchorage, Alaska 99501
                        (907) 276-1681
                        (907) 276-1681 (Fax)
                        dcraigm@aol.com
                        Alaska Bar No. 7605046

                        Attorney for Plaintiffs