DONALD CRAIG MITCHELL
Alaska Bar No. 7605046
1335 F Street
Anchorage, Alaska 99501
(907) 276-1681
(907) 276-1681 (Fax)

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MABEL JOHNSON, by Deborah Higgins, her Next Friend and Daughter, and KARAN GALLAHORN, <br><br>　　　　Plaintiffs, <br><br>vs. <br><br>KIKIKTAGRUK INUPIAT CORPORATION, and SHARRON LIE, <br><br>　　　　Defendants. | No. 3:05-cv-110 JWS |

MEMORANDUM RESPONDING TO ORDER FROM CHAMBERS (JULY 21, 2006)

The court has jurisdiction over the plaintiffs' First and Second Claims for Relief.

First Claim for Relief

The First Claim for Relief alleges that section 14(c)(1) of the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. 1613(c)(1), confers on plaintiff Mabel Johnson the right to require defendant Kikiktagruk Inupiat Corportation (KIC) to

convey to plaintiff Johnson title to the surface estate of an 80 x 100 foot parcel of land on Chairtree Island that includes within its boundaries the cabin that in 1997 plaintiff Johnson authorized plaintiff Karan Gallahorn to construct on the parcel.

The First Amended Complaint alleges that 28 U.S.C. 1331 grants the court jurisdiction to adjudicate that claim.

28 U.S.C. 1331 grants "district courts . . . original jurisdiction of all civil actions <u>arising</u> <u>under</u> the . . . laws . . . of the United States." (emphasis added). As Justice Oliver Wendell Holmes long ago pointed out, "[a] suit <u>arises</u> <u>under</u> the law that <u>creates</u> the cause of action." (emphasis added). <u>American Wells Works Company v. Layne & Bowler Company</u>, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). <u>Accord</u> <u>Hunter v. United States Van Lines</u>, 746 F.2d 653, 644 (9th Cir. 1984).

Section 14(c)(1) of the ANCSA is a law of the United States. And that law creates the cause of action that the First Claim for Relief alleges.

In response to defendant KIC's motion to dismiss, after full briefing by both defendant KIC and the plaintiffs, Judge Singleton concluded that 28 U.S.C. 1331 grants the court jurisdiction to adjudicate the First Claim for Relief. <u>See</u> Order (August 3, 2005); Clerk's Docket No. 6. In so holding, Judge

Singleton cited City of Ketchikan v. Cape Fox Corporation, 85 F.3d 1381 (9th Cir. 1996), as the controlling authority.

In City of Ketchikan this court and the circuit court exercised jurisdiction pursuant to 28 U.S.C. 1331 to adjudicate a claim for relief in which the City of Ketchikan alleged that section 14(c)(1) of the ANCSA imposed a duty on the Cape Fox Corporation to convey to the City the surface estate of a particular parcel of land. As Judge Singleton recognized, that is exactly the claim alleged, and relief requested, here.

While they were not cited by Judge Singleton, another decision of the circuit court, as well as a decision of this court, are additional authority for the conclusion that 28 U.S.C. 1331 grants this court jurisdiction to adjudicate the plaintiffs' First Claim for Relief.

In Donnelly v. United States, 850 F.2d 1313, 1320-21 (9th Cir. 1988), this court and the circuit court exercised jurisdiction pursuant to 28 U.S.C. 1331 to adjudicate a claim for relief in which the estate of Joseph Donnelly alleged that section 14(c)(1) of the ANCSA imposed a duty on Eklutna, Incorporated, to convey to the estate the surface estate of a particular parcel of land. And in Ogle v. Salamatof Native Association, Incorporated, 906 F. Supp. 1321 (D. Alaska 1995),

this court held that it had jurisdiction pursuant to 28 U.S.C. 1331 to adjudicate a claim for relief in which Boy Dexter Ogle alleged that section 14(c)(1) of the ANCSA imposed a duty on the Salamatof Native Association to convey to Mr. Ogle the surface estate of a particular parcel of land. In so holding, the court noted explicitly that:

> Boy Dexter Ogle sues Salamatof Native Association, Inc., in equity for specific performance of a federal statutory duty to reconvey land claimed pursuant to [section 14(c) of ANCSA] . . . This Court has jurisdiction over the reconveyance claim pursuant to 28 U.S.C. 1331 . . . .

Id. 1325.

City of Ketchikan, Donnelly, and Ogle squarely support the conclusion that 28 U.S.C. 1331 grants the court jurisdiction to adjudicate the plaintiffs' First Claim for Relief. While that is not a close question, the concern about its jurisdiction that the court expressed in its Order from Chambers (July 21, 2006) stems from the court's conflation of the question of whether it has jurisdiction pursuant to 28 U.S.C. 1331 to adjudicate the First Claim for Relief with the question of what legal theory supports the validity of that claim.

In that regard, the Order from Chambers (July 21, 2006) characterizes the plaintiffs' reliance on promissory estoppel as the basis for the First Claim for Relief as "a <u>state law</u> estoppel claim". (emphasis added). But promissory estoppel is not a "state law claim". Rather, it is a set of elements that the federal courts developed to guide the exercise of their discretionary power in equity to prevent injustice.

In that regard, it is a long-settled blackletter rule that "[u]nless a statute . . . restricts th[is] court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." <u>Porter v. Warner Holding Company</u>, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1942).

The elements of estoppel generally, and of promissory estoppel in particular, have been developed by the federal courts to assist a particular federal court to determine in a particular case whether, based on the particular facts of that case, the court should exercise its power in equity in order to effectuate a just result. Those elements, and this court's power in equity, are not based on state law.

<u>Jabolon v. United States</u>, 657 F.2d 1064, 1068 (9th Cir. 1981) is instructive. In <u>Jabolon</u>, after determining that the federal Tucker Act granted it jurisdiction to adjudicate a claim

for relief which alleged that a federal agency had breached an employment contract into which it had entered with the plaintiff, the circuit court applied the elements of estoppel to determine whether it should exercise its power in equity and grant the plaintiff the relief he requested. <u>Jabolon</u> involved no state law or state claim.

Finally, mention should be made of the observation in the Order from Chambers (July 21, 2006) that

> Plaintiffs assert ANCSA "confer[red] on defendant [KIC] complete and unfettered discretion . . . to demark the specific boundaries of the parcel[s]." Doc. 12, para. 13. It is unclear why a cause of action to challenge KIC's demarcation would arise under ANCSA if, as plaintiffs suggest, ANCSA established no basis for reviewing the demarcation.

That observation confuses the plaintiffs' description of the process for implementing section 14(c)(1) of the ANCSA that Congress and the Secretary of the Interior created with the question of whether Congress and the Secretary intended a decision which a village corporation makes as part of that implementation process to be subject to judicial review.

The plaintiffs have described the section 14(c)(1) implementation process in paragraph nos. 12 - 14 of their First Amended Complaint.

In summary, that process, and the opportunities for judicial review, are as follows:

In section 14(c)(1) of the ANCSA Congress directed each village corporation that receives from the Secretary of the Interior a conveyance of title to the surface estate of a tract of public land pursuant to section 14 of the ANCSA, 43 U.S.C. 1613, to convey to eligible individuals, both Native and non-Native, title to the parcels of land within the boundaries of the tract that the individuals occupied as a primary place of residence or business, as a subsistence campsite, or as a headquarters for reindeer husbandry.

Congress further provided that - to be eligible for a section 14(c)(1) conveyance - an individual must have been occupying his or her parcel for one of those four purposes on a date certain: December 18, 1971.

Whether an individual was or was not occupying a parcel for one of those four purposes on December 18, 1971 is a question of fact for the village corporation to determine. And a decision of a village corporation regarding that fact is subject to judicial review.

Other than the December 18, 1971 occupation date, section 14(c)(1) of the ANCSA does not contain any other legal standards with which all village corporations must comply when they implement section 14(c)(1). However, in section 25 of the ANCSA, 43 U.S.C. 1624, Congress delegated the Secretary of the Interior discretionary authority to adopt regulations whose promulgation might do so.

In 1976 the Secretary exercised that authority when he promulgated regulations that control the implementation of the ANCSA. See 43 C.F.R. 2650.0-1 et seq. In those regulations, the Secretary established legal standards with which the Secretary requires village corporations to comply when they implement section 14(c)(1). Those standards are that every village corporation must

    1) Enforce the December 18, 1971 occupation date;

    2) Post the boundaries of section 14(c)(1) parcels on the ground; and

    3) Mark the boundaries of section 14(c)(1) parcels on a map that the corporation must submit to the Bureau of Land Management.

See 43 C.F.R. 2650.5-4(c)(1).

Significantly, the Secretary made a policy decision to not include in his regulations legal standards with which all village corporations must comply regarding the size of section 14(c)(1) parcels, as well as regarding the process the corporations employ to post the boundaries of the parcels. Instead, the Secretary decided to allow each village corporation to make its own decisions regarding the size of parcels and regarding the process it would employ to post the boundaries.

However, at the time the Secretary made that policy choice, he did not intend to confer on village corporations unfettered authority to make whatever decisions regarding those subjects that they wished. Rather, the Secretary recognized that village corporation decisions regarding those subjects would be subject to judicial review. The Secretary announced that decision in 43 C.F.R. 2650.5-4(c)(1), which, in pertinent part, directs that

> Conflicts arising among potential transferees identified in section 14(c) of the [ANCSA], or between the village corporation and such transferees, will be resolved prior to submission of the map.

The Secretary did not identify the entity that would revolve the conflicts. But his reference to conflicts "between the village corporation and such transferees" recognizes that a decision made by a village corporation could engender a conflict

9

with a transferee. It also recognizes that a conflict between a village corporation and a transferee would be resolved by an entity other than the village corporation (because, if a village corporation's authority to make decisions regarding its implementation of section 14(c)(1) is unfettered, a conflict between the village corporation and a transferee would never arise because the corporation would simply impose its chosen result).

Four years after the Secretary of the Interior promulgated his ANCSA implementation regulations, Congress enacted section 902(b) of the Alaska National Interest Lands Conservation Act, 43 U.S.C. 1632(b). In section 902(b), Congress explicitly recognized that (as the Secretary of the Interior had intended in 43 C.F.R 2650.5-4(c)(1)) all decisions made by a village corporation regarding its implementation of section 14(c)(1) of the ANCSA are subject to judicial review.

But what Congress did not identify in section 902 is the legal standard a court should employ when it reviews a village corporation section 14(c)(1) implementation decision.

For example, if a village corporation were to decide to convey to the occupant of a 10 x 12 foot cabin only a 10 x 12 foot parcel of land and the occupant sought judicial review of

that decision, what standard would the court use to judge that decision against? Since Congress and the Secretary of the Interior have not created a standard, of necessity, the court would be compelled to exercise its power in equity to fashion a result that, based on the particular facts of the case, would effectuate a just result.

In their First Claim for Relief the plaintiffs request the court to exercise that same power in equity to effectuate a just result regarding the plaintiffs' conflict with defendant KIC regarding where defendant KIC should post the boundaries of plaintiff Johnson's section 14(c)(1) parcel.

For the reasons set forth above, this court has jurisdiction to adjudicate the plaintiffs' First Claim for Relief, and the power in equity to resolve the dispute which the claim presents for decision in a manner that the court deems just.

### Second Claim for Relief

When deciding a motion to dismiss a claim for relief, the court assumes that the facts alleged in the claim are true. See Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). For the purposes of this memorandum, the court should make that same assumption with respect to the facts the plaintiffs have alleged in their Second Claim for Relief.

Those facts indicate that defendant Sharron Lie has no right to receive from defendant KIC conveyance of title to the surface estate of <u>any</u> parcel of land on Chairtree Island because, as defendant Lie admitted in the section 14(c)(1) application that she submitted to defendant KIC, she was not occupying any parcel of land on Chairtree Island on December 18, 1971 for any of the purposes listed in section 14(c)(1).

But even so, in its Order from Chambers (July 21, 2006) the court expressed concern that it "is not clear that plaintiffs have standing to challenge [defendant] KIC's decision [to convey to defendant Lie, pursuant to section 14(c)(1), title to the surface estate of a parcel of land on Chairtree Island]".

For the reasons discussed below, the plaintiffs do have standing.

As the U.S. Supreme Court observed in <u>Kowalski v. Tesmer</u>, 543 U.S. 125, 128, 125 S.Ct. 564, 567, 160 L.Ed.2d 519 (2004): "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance". In that regard, the Court recently summarized its standing-related holdings by announcing that, to have standing,

> The plaintiff must show that the conduct of which he complains has caused him to suffer an "injury in fact" that a favorable judgment will redress.

Elk Grove Unified School District v. Newdow, 542 U.S. 1, 12, 124 S.Ct. 2301, 2308, 159 L.Ed.2d 98 (2004).

In turn, in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), the Court defined an "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical". (citations and internal quotation marks omitted).

Applying the "injury in fact" standard here, if, pursuant to section 14(c)(1) of the ANCSA, defendant KIC intends to convey to defendant Lie title to the surface estate of a parcel of land on Chairtree Island that does <u>not</u> include the land on which plaintiff Johnson authorized plaintiff Gallahorn to construct a cabin, then the plaintiffs do not have standing to invoke the jurisdiction of this court to adjudicate their Second Claim for Relief because, while the conveyance to defendant Lie would be an unlawful waste of the assets of defendant KIC, it would not inflict an "injury in fact" on the plaintiffs. Rather, whether defendant Lie satisfied the occupancy requirement that section

14(c)(1) imposes is a question in which only the board of directors and shareholders of defendant KIC have a legally protected interest.

But if defendant KIC intends to convey to defendant Lie title to the surface estate of a parcel of land on Chairtree Island that does include the land on which plaintiff Johnson authorized plaintiff Gallahorn to construct a cabin, that conveyance will inflict a concrete, particularized, and actual "injury in fact" on the plaintiffs' legally protected interest in having defendant KIC convey title to the surface estate of that land to plaintiff Johnson. In that situation, the plaintiffs would have standing to invoke the jurisdiction of this court to adjudicate their Second Claim for Relief.

And that is the situation here.

The plaintiffs have standing because defendant KIC has repeatedly informed the plaintiffs and defendant Lie that it intends to convey to defendant Lie title to the surface estate of a parcel of land on Chairtree Island that includes the land on which plaintiff Johnson authorized plaintiff Gallahorn to construct a cabin. See e.g., Plaintiffs' Exhibit No. 10 (letter from defendant KIC's land manager informing plaintiff Gallahorn that the board of directors of defendant KIC had decided at its

November 25, 2002 meeting to post the boundary line between plaintiff Johnson's and defendant Lie's section 14(c)(1) parcels "half way between the Lie's cache and Johnson's cabin beginning at the boat landing").

DATED: August 6, 2006

        s/ DONALD CRAIG MITCHELL
        1335 F Street
        Anchorage, Alaska 99501
        (907) 276-1681
        (907) 276-1681 (Fax)
        dcraigm@aol.com
        Alaska Bar No. 7605046

        Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on August 6, 2006, a copy of Memorandum Responding to Order From Chambers (July 21, 2006) was served on:

| | |
|---|---|
| JOHN HAVELOCK | SAM FORTIER |
| Attorney at Law | Fortier & Mikko |
| 632 Christensen Drive  Suite 100 | Suite 304 |
| Anchorage, Alaska 99501 | 101 W. Benson Blvd. |
| | Anchorage, Alaska 99503 |

        s/ DONALD CRAIG MITCHELL